**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID HAYES, KAMILAH GALBRETH, and TAYLOR AMBROISNO individually and on behalf of all others similarly situated, | |
|     Plaintiffs, | Case No. 1:23-CV-16596 |
| v. | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| THE KRAFT HEINZ COMPANY, and KRAFT HEINZ INGREDIENTS CORP. | **JURY DEMANDED** |
|     Defendants. | |

Now come the Plaintiffs, David Hayes, Kamilah Galbreth, and Taylor Ambroisno (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, and for their Class Action Complaint against the Defendants, The Kraft Heinz Company, and Kraft Heinz Ingredients Corp. ("Defendants"), Plaintiffs allege and state as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, unjust enrichment, Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of express warranty resulting from the illegal actions of Defendants, in intentionally labeling their Products as containing no artificial preservatives, or in the alternative no preservatives, when they contain the

preservatives citric acid, sodium phosphate, and sodium triphosphate. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

2.     Plaintiff David Hayes is an individual who was at all relevant times residing in Bloomingdale, Illinois. Plaintiff Hayes purchased one of the Products during the class period in Illinois.

3.     Plaintiff Kamilah Galbreth is a resident of California. Plaintiff Galbreth purchased one of the Products during the class period in California.

4.     Plaintiff Taylor Ambroisno is a resident of New York. Plaintiff Ambroisno purchased one of the Products during the class period in New York.

5.     Defendant The Kraft Heinz Company is a Delaware corporation, whose principal place of business is located in Chicago, Illinois.

6.     Defendant Kraft Heinz Ingredients Corp is a Delaware corporation, whose principal place of business is located in Chicago, Illinois

7.     At all times relevant hereto, Defendants were engaged in the marketing and sale of macaroni and cheese products.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because Defendants removed this case alleging that the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendants.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District.

**FACTS COMMON TO ALL COUNTS**

10.     Defendants advertise, market, sell, and distribute macaroni and cheese throughout Illinois, California, New York, and the United States.

11.     During the Class Period Defendants sold the following Kraft Macaroni and Cheese products (the "Products") labeled, marketed, and sold with the label "No Artificial Flavors, Preservatives, or Dyes" but which actually contained citric acid, sodium phosphate, and/or sodium triphosphate:

a)  Original flavor;

b)  Original Flavor, Sponge Bob Square Pants shapes;

c)  Original Flavor, Paw Patrol shapes;

d)  Original Flavor, Unicorn shapes;

e)  Original Flavor, with cauliflower;

f)  Original Flavor, with whole grans;

g)  Original Flavor, with spirals;

h)  White Cheddar Flavor;

i)  Deluxe Four Cheese Flavor;

j)  Original Flavor, Easy Mac;

k)  Thick n Creamy;

l)  Three Cheese;

12.     The United Stated Food and Drug Administration ("FDA") defines the term chemical preservative as: "any chemical that, when added to food, tends to prevent or retard

deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22.

13.     Sodium phosphate salts are produced by a variety of synthetic processes including, but not limited to, acid base reactions between phosphoric acid and sodium carbonate.

14.     The process to synthesize sodium phosphate and sodium triphosphate includes the following: tricalcium phosphate is purified phosphate rock, which is then reacted with sulfuric acid to form phosphoric acid and calcium sulfate, phosphoric acid is then reacted with sodium hydroxide to create sodium phosphate salts and water.

15.     The following figures depicts the synthesis of sodium hydrogen phosphate, one of the regularly used sodium phosphate salts:



16.     Sodium phosphate salts are highly water-soluble inorganic salts and are added to foods to retard the deterioration thereof by preventing microbial growth and survival, lipid oxidation, and enzymatic browning to extend the shelf life of consumer food products.[1]

17.     In basic terms, sodium phosphate salts extends the shelf-life of the Products by creating an environment inhospitable to bacteria growth.

18.     Specifically, as depicted in the chart below, sodium phosphates are used as preservatives in cheese:

**TABLE 4-1   Common Sodium-Containing Compounds Used for Food Preservation**

| Compound Name | Food to Which the Compound Is Added |
| --- | --- |
| Disodium ethylenediaminetetraacetic acid (EDTA) | Salad dressing, mayonnaise, canned seafood, fruit fillings |
| Sodium acetate | Baked goods, seafood |
| Sodium ascorbate | Meat products |
| Sodium benzoate | Beverages, fermented vegetables, jams, fruit fillings, salad dressings |
| Sodium dehydroacetate | Squash |
| Sodium diacetate | Condiments |
| Sodium erythorbate | Meat, soft drinks |
| Sodium lactate | Meat products |
| Sodium nitrate | Cured meats |
| Sodium nitrite | Cured meats |
| Sodium phosphates | Meat products, cheese, puddings or custards |
| Sodium propionate | Cheese, baked goods |
| Sodium sulfite | Fruit and vegetable products, seafood |

SOURCE: Doyle et al., 2001.

[2]

---

[1] National Academies of Sciences, Engineering, and Medicine. Strategies to Reduce Sodium Intake in the United States, https://nap.nationalacademies.org/catalog/12818/strategies-to-reduce-sodium-intake-in-the-united-states.
[2] Doyle, M. P., L. R. Beuchat, and T. J. Montville, eds. 2001. Food microbiology: Fundamentals and frontiers. 2nd ed. Washington, DC: ASM Press

19.     Based on the forgoing allegations, sodium phosphate salts are artificially produced chemicals that retard the deterioration consumer products. Therefore, Defendants use sodium phosphate salts that are artificial chemical preservatives in the Products.

20.     Defendants also use artificial citric acid in the Products. Many commercial food manufactures, including Defendants, use a synthetic form of citric acid that is derived from heavy chemical processing.[3] Commercially produced citric acid is manufactured using a type biologically engineered black mold called *Aspergillus niger*.[4] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract citric acid from aspergillus niger fermentation liquor.[5] Citric acid produced through chemical solvent extraction contains residues of those chemical solvents. Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[6] Defendants use synthetic manufactured citric acid in the Products.

21.     In warning letters sent to Oak Tree Farm Dairy, Inc. and the Hirzel Canning Company, the FDA warned that certain products were misbranded under the Federal Food Drug

---

[3] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[4] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653
[5] 21 CFR 173.280
[6] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

and Cosmetics Act because adding citric acid to the products precluded the use of the term "natural" to describe the products.[7]

22.    Citric acid acts as a preservative when added to food products, including the Products at issue. The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[8]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

23.    In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[9]

24.    The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties, as shown below[10]:

---

[7] See Exhibits A and B attached hereto

[8] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

[9] *See* **Exhibit C** attached hereto.

[10] *Preservatives*, BRITANICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| Food preservatives | |
| --- | --- |
| **chemical agent** | **mechanism of action** |
| **Antioxidants** | |
| ascorbic acid | oxygen scavenger |
| butylated hydroxyanisole (BHA) | free radical scavenger |
| butylated hydroxytoluene (BHT) | free radical scavenger |
| citric acid | enzyme inhibitor/metal chelator |
| sulfites | enzyme inhibitor/oxygen scavenger |
| tertiary butylhydroquinone (TBHQ) | free radical scavenger |
| tocopherols | free radical scavenger |

25.     The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[11]

26.     The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[12]

---

[11] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.
[12] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

27. Several academic journals also note the use of citric acid as a preservative.[13] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[14] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[15]

28. Citric acid, sodium phosphate, and sodium triphosphate are preservatives in the Products regardless of whether Defendants intended to use them as preservatives. Preservatives maintain the same food deterioration retardant properties even if they are also added to the Products for some other use. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[16]

29. On August 14, 2023, Plaintiff, David Hayes, purchased a Product labeled, marketed, and sold as containing "no artificial preservatives", from a Walmart located at 314 West Army Trail Road, Bloomingdale, Illinois.

---

[13] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available* *at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets,* WORLD'S POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[14] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[15] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[16] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

30.    Plaintiff Kamilah Galbreth has purchased Kraft Mac & Cheese Products, including the Kraft Mac & Cheese Original Flavor, with the "No Artificial Flavors, Preservatives, or Dyes" label claim during the class period. Plaintiff Galbreth's last purchase of the Products was in approximately October of 2023 from a Food 4 Less store located in California.

31.    Plaintiff Taylor Ambroisno has purchased Kraft Mac & Cheese Products, including, Kraft Mac & Cheese Original Flavor, Kraft Mac & Cheese Three Cheese, and Kraft Mac & Cheese Thick N' Creamy , with the "No Artificial Flavors, Preservatives, or Dyes" label claim during the class period. Plaintiff Ambroisno's last purchase was in approximately January of 2024 from a Stop N' Shop store located in Brooklyn, New York.

32.    Plaintiffs saw and relied on the "No Artificial Flavors, Preservatives, or Dyes" claim on the labels of the Products when making their purchases.

33.    Plaintiffs, and reasonable consumers, understand that products labeled as containing "no artificial preservatives" will not contain any artificial preservatives.

34.    Reasonable consumers, and Plaintiffs, understand the term artificial based on common parlance, such that "artificial' means "made by people."[17]

35.    Reasonable consumers, and Plaintiffs, understand the term preservative based on common parlance, such that "preservative" means "a chemical used to stop food from decaying".[18]

36.    The "No Artificial Flavors, Preservatives, or Dyes" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of

---

[17]Cambridge English Dictionary, s.v. "artificial," accessed November 21, 2023, https://dictionary.cambridge.org/us/dictionary/english/artificial.
[18]  Cambridge English Dictionary, s.v. "preservative," accessed November 21, 2023, https://dictionary.cambridge.org/us/dictionary/english/preservative.

American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[19]

37.     Recent published consumer research[20] surveying over 400 consumers concluded: "The significance of naturalness has crucial meaning for consumers nowadays. They prefer food free from preservatives, additives or artificial ingredients for perceived naturalness of foods."

38.     Persons, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

39.     By making false and misleading claims about the contents of its Products, Defendants impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

40.     Therefore, Plaintiffs have been deprived of their legally protected interest to obtain true and accurate information about his consumer products as required by law.

41.     As a result of Defendants' fraudulent labeling, Plaintiffs and the Classes have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would not contain artificial preservatives.

---

[19] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

[20] Guzik P, Szymkowiak A, Kulawik P, Zając M. *Consumer Attitudes towards Food Preservation Methods*. Foods. 2022 May 6;11(9):1349.

11

42.     As a result of Defendants' fraudulent labeling, Plaintiffs and the Classes paid a price premium for premium Products, but instead received non-premium Products.

43.     Plaintiffs and the Classes purchased Defendants' Products because Defendants' advertising claimed that the Products did not contain artificial preservatives.

44.     Furthermore, due to Defendants' intentional, deceitful practice of falsely labeling the Products as containing "no artificial preservatives", Plaintiffs could not have known that the Products contained artificial preservatives.

45.     Plaintiffs were unaware that the Product contained an artificial preservative when they purchased it.

46.     The following are examples of Defendants' misleading labels:





47.     Worse than the lost money, Plaintiffs and the Classes were deprived of their protected interest to choose the type and quality of products they ingest.

48.     Defendant, and not Plaintiffs or the Classes, knew or should have known that labeling, marketing, and selling the Products as containing "no artificial preservatives" was false, deceptive, and misleading, and that Plaintiffs and the Class Members would not be able to tell the Products they purchased contained artificial preservatives unless Defendants expressly told them.

49.     On information and belief, Defendants did know that Products contained artificial preservatives but chose to label the Products with "no artificial preservative" labeling because it did not believe its customers were well educated enough to know the difference.

50.     On information and belief, Defendants employ professional chemists to create the chemical formulas of the Products, therefore, Defendants through their employees knew or should have known that citric acid, sodium phosphate, and sodium triphosphate retard the deterioration of food products and are therefore chemical preservatives.

51.     Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

52.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendants' overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiffs and the class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

53.     A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiffs and members of the class because Defendants continue to misrepresent the Products as containing "No Artificial Flavors, Preservatives, or Dyes"

14

when the Products actually contain artificial preservatives. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain artificial preservatives. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by Defendants' future harm, because discovery and Plaintiffs' investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

54. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available

for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

55.     As a result of Defendants' acts and omissions outlined above, Plaintiffs have suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

  a.     Lost money;

  b.     Wasting Plaintiffs' time; and

  c.     Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

56.      Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

57.     Plaintiff Hayes also brings this action on behalf of himself and all others similarly situated, as a member of a proposed sub-class (the "Illinois Sub-Class"), defined as follows

> All persons within the State of Illinois who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

58.     Plaintiff Galbreth also brings this action on behalf of herself and all others similarly situated, as a member of a proposed sub-class (the "California Sub-Class"), defined as follows:

> All persons who purchased the Products for personal use in California within the applicable statute of limitations prior to the filing of the original Complaint through the date of class certification.

59. Plaintiff Ambroisno also brings this action on behalf of herself and all others similarly situated, as a member of a proposed sub-class (the "New York Sub-Class"), defined as follows:

> All persons who purchased the Products for personal use in New York within the applicable statute of limitations prior to the filing of the original Complaint through the date of class certification.

60. Defendant, its employees and agents are excluded from the Class and Sub-classes. Plaintiffs do not know the number of members in the Classes, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

61. The Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believes and thereon alleges that the Classes include thousands, if not millions of members. Plaintiffs allege that the classes members may be ascertained by the records maintained by Defendants.

62. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Classes are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

63. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

  a. Whether Defendants disseminated false and misleading information by claiming the Products contained "no artificial preservatives";

  b. Whether the Class and Sub-Class members were informed that the Products contained artificial preservatives;

  c. Whether the Products contained artificial preservatives;

  d. Whether Defendants' conduct was unfair and deceptive;

  e. Whether Defendants unjustly enriched itself as a result of the unlawful conduct alleged above;

  f. Whether there should be a tolling of the statute of limitations; and

  g. Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

64. As residents of the United States and the States of Illinois, California, and New York who purchased the Products, Plaintiffs are asserting claims that are typical of the Classes.

65. Plaintiffs have no interests adverse or antagonistic to the interests of the other members of the Classes.

66. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained attorneys experienced in the prosecution of class actions.

67. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all

18

parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

68.    The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

69.    Plaintiffs' claims and injuries are identical to the claims and injuries of all class members, because all claims and injuries of all class members are based on the same false labeling and the same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendants when they claimed the Products contained "No Artificial Flavors, Preservatives, or Dyes," when in reality the Products contained artificial preservatives.

70.    Defendants have acted or refused to act in respect generally applicable to the Classes thereby making appropriate final judgement with regard to the members of the Class and Sub-Classes as a whole.

71.    Defendants failed to comply with the requirements of the law as to the Classes with respect to the above-alleged transactions.

**COUNT I**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.***

72. Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 55 above as if fully reiterated herein

73. Plaintiff David Hayes brings this count on behalf of the Illinois Sub-Class.

74. Plaintiff David Hayes is a "person" as defined in 815 ILCS 505/1(c), as he is a natural person.

75. Defendants are both a "person" as defined in 815 ILCS 505/1(c), as they are companies and business entities and/or associations.

76. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

77. Through their representations that the Products contained "No Artificial Flavors, Preservatives, or Dyes" Defendants made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

78. 815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...
>
> (c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

79.   In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

80.   Defendants failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

81.   By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendants' conduct violated 815 ILCS 505/2, enjoining Defendants from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.   An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representatives of the Class and the Sub-Classes;

b.   An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.   An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.   Judgment against Defendants in an amount to be determined at trial;

e.   An order for injunctive relief prohibiting such conduct by Defendants in the future;

     f.     Judgment against Defendants for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

     g.     Any other relief deemed just and proper by this Court.

## COUNT II
## COMMON LAW FRAUD

82.     Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 55 above as if fully reiterated herein.

83.     Plaintiffs bring this count on behalf of the Nationwide Class and all Sub-Classes.

84.     Through its false statements that the Products contained "No Artificial Flavors, Preservatives, or Dyes", Defendants made false statements of material fact.

85.     At the time Defendants made their statements to Plaintiffs that the Products did not contain artificial preservatives, they knew, or reasonably should have known, that the statements described above were false.

86.     At the time Defendants made the statements to Plaintiffs, Defendants intended to induce Plaintiffs to purchase the Products.

87.     Plaintiffs relied upon the truth of the statements described above and purchased the Products, only to find that the Products they purchased contained artificial preservatives.

88.     As a result of their reasonable reliance upon Defendants' false statements of material fact as set forth above, Plaintiffs and other members of the Class and Sub-Classes have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment against Defendants as follows:

a.  An order certifying the Class and the Sub-Classes and appointing Plaintiffs as Representatives of the Class and the Sub-Classes;

b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.  Judgment against Defendants in an amount to be determined at trial;

e.  An order for injunctive relief prohibiting such conduct by Defendants in the future;

f.  Judgment against Defendants for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g.  Any other relief deemed just and proper by this Court.

## <u>COUNT III</u>
## <u>UNJUST ENRICHMENT</u>

89.  Plaintiffs incorporates all of the allegations and statements made in Paragraphs 1 through 55 above as if fully reiterated herein.

90.  Plaintiffs bring this count on behalf of the Nationwide Class and all Sub-Classes.

91.  Plaintiffs conferred monetary benefits to Defendants by purchasing the Products.

92.  Defendants have been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products contained "No Artificial Flavors, Preservatives, or Dyes".

93.  Defendants' retention of the revenue it received from Plaintiffs, and the Class and Sub-Class members, is unjust and inequitable because Defendants' false statements caused injuries

to Plaintiff, and the Class and Sub-Class members, as they would not have purchased the Products, or would not have paid a premium price, if they knew the Products contained artificial preservatives.

94.     Defendants' unjust retention of the benefits conferred on it by Plaintiffs, and the Class and Sub-Classes members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendants for the Products.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendants as follows:

a.  An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representatives of the Class and the Sub-Classes;

b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.  Judgment against Defendants in an amount to be determined at trial;

e.  An order for injunctive relief prohibiting such conduct by Defendants in the future;

f.  Judgment against Defendants for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

g.  Any other relief deemed just and proper by this Court.

**COUNT IV**
**VIOLATION OF CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750 *et seq***

24

88.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

89.     Plaintiff Galbreth brings this count on behalf of the California Sub-Class.

90.     Plaintiff Galbreth brings this claim under the CLRA individually and on behalf of the Class against Defendant.

91.     At all times relevant hereto, Plaintiff Galbreth and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

92.     At all relevant times, Defendants were  "persons," as defined in California Civil Code section 1761(c).

93.     At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendants constituted "goods," as defined in California Civil Code section 1761(a).

94.     The purchases of the Products by Plaintiff Galbreth and the members of the California Sub-Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

95.     Defendants disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial Flavors, Preservatives, or Dyes." Defendants failed to disclose that the Products contain artificial preservatives. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain artificial preservatives to be important to their decision in purchasing the Products. Defendants' representations violate the CLRA in the following ways:

96.     Defendants represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

97.     Defendants represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

98.     Defendants advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

99.     Defendants represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

100.    Defendants violated the CLRA because the Products were prominently advertised as containing "No Artificial Flavors, Preservatives, or Dyes," but, in reality, the Products contain a artificial preservatives. Defendants knew or should have known that consumers would want to know that the Products contain artificial preservatives.

101.    Defendants' actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

102.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendants are still representing that the Products have characteristics which they do not have.

103.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendants from engaging in the methods, acts, and practices alleged herein.

104.    Pursuant to California Civil Code section 1782, Plaintiff notified Defendant The Kraft Heinz Company in writing by certified mail of the alleged violations of the CLRA. Defendant The Kraft Heinz Company has failed to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of

written notice pursuant to section 1782 of the CLRA. Accordingly, Plaintiff seeks damages against Defendant The Kraft Heinz Company.

105.     Pursuant to California Civil Code section 1782, Plaintiff will notify and will demand that Defendant Kraft Heinz Ingredients Corp. rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant Kraft Heinz Ingredients Corp. fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will amend her complaint to seek damages against Defendant Kraft Heinz Ingredients Corp.

106.     Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing that this action was commenced in a proper forum.

## REQUEST FOR RELIEF

Plaintiff Galbreth, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of Defendants' unlawful, unfair, and fraudulent business practices;

c.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

d.     Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff Galbreth and the other members of the California Sub-Class;

f.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

## COUNT V
## VIOLATION OF UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200 *et seq*

107.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

108.    Plaintiff Galbreth brings this count on behalf of the California Sub-Class.

109.    Plaintiff Galbreth brings this claim under the UCL individually and on behalf of the Class against Defendants.

110.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

111.    Defendants committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

112.    Defendants committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members

28

of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendants. Further, Defendants failed to disclose a material fact (that the Products contain artificial preservatives) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendants were unjustly enriched by its false misrepresentations and material omissions. As a result, Defendants' conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

113. Defendants committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendants' business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no artificial preservatives.

114. Plaintiff Galbreth and the other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendants' Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendants' unlawful, unfair, and fraudulent practices.

115. Defendants' wrongful business practices and violations of the UCL are ongoing.

116. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in

an amount according to proof.

117.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendants of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendants from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## REQUEST FOR RELIEF

Plaintiff Galbreth, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

h.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

i.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of Defendants' unlawful, unfair, and fraudulent business practices;

j.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

k.     Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

l.     Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

m.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

n.      Ordering such other and further relief as may be just and proper.

## COUNT VI
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW ("G.B.L") § 349

88.      Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

89.      Plaintiff Ambroisno brings this count on behalf of the New York Sub-Class.

90.      New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

91.      In its sale of Products throughout the state of New York, at all relevant times herein, Defendants conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

92.      Plaintiff Ambroisno and the New York Sub-Class members are consumers who purchased the Products from Defendants for their personal use.

93.      By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they contain "No Artificial Flavors, Preservatives, or Dyes." Despite that representation, however, the Products contain artificial preservatives.

94.      . The foregoing deceptive acts and practices were directed at consumers.

95.      The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

96.      As a result of Defendants' deceptive practices, Plaintiff Ambroisno and the New York Sub-Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendants' misrepresentations.

97.     On behalf of herself and the New York Sub-Class members, Plaintiff Ambroisno seeks to recover their actual damages or fifty dollars per unlawful transaction, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**REQUEST FOR RELIEF**

Plaintiff Ambroisno, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative for the New York Sub-Class and appointing the undersigned counsel as Class Counsel for the New York Sub-Class;

b.      Ordering statutory damages in the amount of $50 for each purchase of the Products made by Plaintiff and the New York Sub-Class members.

c.      Ordering actual damages and treble damages.

d.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of Defendants' unlawful, unfair, and fraudulent business practices;

e.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

f.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

g.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

h.      Ordering such other and further relief as may be just and proper.

**COUNT VII**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW ("G.B.L") § 350**

88.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

89.     Plaintiff Ambroisno brings this count on behalf of the New York Sub-Class.

90.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

91.     Defendants violated New York General Business Law § 350 by representing on the packaging of the Products that they contain "No Artificial Flavors, Preservatives, or Dyes." Despite that representation, however, the Products contain artificial preservatives.

92.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

93.     Defendants' misrepresentations have resulted in consumer injury or harm to the public interest.

94.     As a result of Defendants' false advertising, Plaintiff and the New York Sub-Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendants' misrepresentations.

95.     On behalf of herself and the New York Sub-Class members, Plaintiff seeks to recover their actual damages or five hundred dollars per unlawful transaction, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## REQUEST FOR RELIEF

Plaintiff Ambroisno, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative for the New York Sub-Class and appointing the undersigned counsel as Class Counsel for the New York Sub-Class;

b.      Ordering statutory damages in the amount of $500 for each purchase of the Products made by Plaintiff and the New York Sub-Class members.

c.      Ordering actual damages and treble damages.

d. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of Defendants' unlawful, unfair, and fraudulent business practices;

e. Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

f. Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

g. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

h. Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiffs prevail on any of their claims in this action.

RESPECFULLY SUBMITTED,

DAVID HAYES, KAMILAH GALBRETH, and TAYLOR AMBROISNO

/s/ Todd M. Friedman
Attorney for Plaintiffs
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd., #340
Woodland Hills, California 91364
Phone: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com

/s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Phone: (224) 218-0875
Fax: (866) 633-0228
Steven.perry@toddflaw.com

CROSNER LEGAL, P.C.

By: /s/ Michael T. Houchin

MICHAEL T. HOUCHIN
*Pro hac vice* forthcoming
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

*Attorneys for Plaintiffs and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing document was filed on February 23, 2024 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

<u>/s/ Todd M. Friedman    </u>
Attorney for Plaintiffs