## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID HAYES, KAMILAH GALBRETH, and TAYLOR AMBROISNO, on behalf of themselves and all others similarly situated, | Case No. 1:23-cv-16596 |
| Plaintiffs, | The Honorable Mary M. Rowland |
| v. | |
| THE KRAFT HEINZ COMPANY and KRAFT HEINZ INGREDIENTS CORP., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF KRAFT HEINZ'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE NATIONWIDE CLASS ALLEGATIONS**

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendants
The Kraft Heinz Company and
Kraft Heinz Ingredients Corp.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ............................................................................. 3

ARGUMENT .......................................................................................................................... 4

I.  Plaintiffs Have Not Plausibly Alleged That the Citric Acid and Sodium
    Phosphate Salts in Kraft Mac & Cheese Are "Artificial Preservatives." ...................... 5

    A.  Plaintiffs have not plausibly alleged that the citric acid and sodium
        phosphate salts in Kraft Mac & Cheese are "artificial." .................................... 5

    B.  Plaintiffs have not plausibly alleged that the citric acid and sodium
        phosphate salts in Kraft Mac & Cheese function as "preservatives." ................ 8

II.  Plaintiffs Lack Standing to Seek Injunctive Relief. ....................................................... 11

III.  The Court Should Strike Plaintiffs' Nationwide Class Allegations ............................ 12

CONCLUSION ...................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................4, 5, 6, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ...................................................................13, 14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .............................................................................11

*Clay v. Am. Tobacco Co.*,
  188 F.R.D. 483 (S.D. Ill. 1999) .........................................................................14

*Cowen v. Lenny & Larry's, Inc.*,
  No. 17-1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) ................................13

*Daly v. Glanbia Performance Nutrition, Inc.*,
  No. 23-933, 2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) ........................13, 14, 15

*Esser v. McIntyre*,
  661 N.E.2d 1138 (Ill. 1996) ...............................................................................13

*Forth v. Walgreen Co.*,
  No. 17-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) ..................................11

*Freeman v. MAM USA Corp.*,
  528 F. Supp. 3d 849 (N.D. Ill. 2021) .................................................................12

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982).............................................................................................12

*Geske v. PNY Techs, Inc.*,
  503 F. Supp. 3d 687 (N.D. Ill. 2020) .................................................................11

*Hill v. Wells Fargo Bank, N.A.*,
  946 F. Supp. 2d 817 (N.D. Ill. 2013) .................................................................13

*Hu v. Herr Foods, Inc.*,
  251 F. Supp. 3d 813 (E.D. Pa. 2017) ...........................................................10, 11

*Indiviglio v. B&G Foods, Inc.*,
No. 22-9545, 2023 WL 9022866 (S.D.N.Y. Dec. 29, 2023) ....................................................7

*Ivie v. Kraft Foods Global, Inc.*,
961 F. Supp. 2d 1033 (N.D. Cal. 2013) .........................................................................10, 11

*Kubilius v. Barilla America, Inc.*,
No. 18-6656, 2019 WL 2861886 (N.D. Ill. July 2, 2019) ....................................................15

*Martin v. Living Essentials, LLC*,
160 F. Supp. 3d 1042 (N.D. Ill. 2016) ..................................................................................4

*Martin v. Living Essentials, LLC*,
653 F. App'x 482 (7th Cir. 2016) .........................................................................................5

*Miller v. Gen. Motors Corp.*,
No. 98-2851, 2003 WL 168626 (N.D. Ill. Jan. 26, 2003)....................................................14

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) .............................................................................................12

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
No. 05-2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006).................................................14

*Siegel v. Shell Oil Co.*,
256 F.R.D 580 (N.D. Ill. 2008)...........................................................................................14

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010) .............................................................................................14

*Simic v. City of Chicago*,
851 F.3d 734 (7th Cir. 2017) .............................................................................................11

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)............................................................................................................12

*Spector v. Mondelēz Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ....................................................................................4

*Tanner v. Jupiter Realty Corp.*,
433 F.3d 913 (7th Cir. 2006) .............................................................................................13

*Tarzian v. Kraft Heinz Foods Co.*,
No. 18-7148, 2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) ...........................................1, 6, 7

*Tylka v. Gerber Prods. Co.*,
178 F.R.D. 493 (N.D. Ill. 1998)..........................................................................................14

*Valencia v. Snapple Beverage Corp.*,
    No. 23-1399, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ........................................1, 2, 7, 8

*Vulcan Golf LLC v. Google Inc.*,
    254 F.R.D. 521 (N.D. Ill. 2008) ................................................................................................14

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................................................12

**Statutes**

805 ILCS 505/1 *et seq.* ....................................................................................................................4

Cal. Bus. & Prof. Code §§ 17200 *et seq.* .......................................................................................4

Cal. Civ. Code §§ 1750 *et seq.* .......................................................................................................4

N.Y. Gen. Bus. Law § 349 ...............................................................................................................4

N.Y. Gen. Bus. Law § 350 ...............................................................................................................4

**Other Authorities**

7 C.F.R. § 205.605 ...........................................................................................................................6

21 C.F.R. § 101.22 ........................................................................................................................8, 9

21 C.F.R. § 184.1033 .......................................................................................................................6

## INTRODUCTION

This lawsuit alleges that Kraft Heinz mislabels its iconic Kraft Mac & Cheese products with the phrase "No Artificial Preservatives." According to Plaintiffs, this statement is false because Kraft Mac & Cheese contains ingredients—including citric acid and sodium phosphate salts—that are allegedly "artificial" and allegedly function as "preservatives." To prevail based on that theory of deception, Plaintiffs must plausibly allege not only that the citric acid and sodium phosphate salts in Kraft Mac & Cheese are "artificial," but also that they function as "preservatives." Plaintiffs' factual allegations do not come close to doing so.

Plaintiffs allege at length that sodium phosphate salts and citric acid can be produced via synthetic processes and that many manufacturers use synthetic versions of these ingredients. But these allegations do not establish that the sodium phosphate salts and citric acid *used in Kraft Mac & Cheese* are in fact artificial ingredients—let alone that consumers would regard them as artificial. Indeed, faced with a similar lawsuit challenging Kraft Heinz's representation that one of its products contained "no artificial preservatives," Judge Kocoras dismissed the plaintiffs' claims and found that their allegations failed to "draw a connection between the common industry practice and the actual practice used by Kraft." *Tarzian v. Kraft Heinz Foods Co.*, No. 18-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 10, 2019). Other courts have reached the same conclusion.

Even if Plaintiffs *had* plausibly alleged that the sodium phosphate salts and citric acid in Kraft Mac & Cheese are synthesized using "artificial" *processes* (which they have not), that does not mean reasonable consumers would regard the resulting *ingredients* as "artificial." Less than a week ago, another federal court applied this reasoning to dismiss a lawsuit in which the plaintiff—like Plaintiffs here—alleged that the citric acid in Snapple's beverages was "synthetic" because it was manufactured via *Aspergillus niger* fermentation. *See Valencia v. Snapple Beverage Corp.*, No. 23-1399, 2024 WL 1158476, at *5–6 (S.D.N.Y. Mar. 18, 2024). Even if one credited this

"bare allegation," the *Valencia* court still found it implausible that a reasonable consumer would "think that a compound found in nature is artificial" simply because "it is produced in a different way than nature produces it." *Id.* at *6. That reasoning applies with equal force here.

Leaving aside their failure to allege that the citric acid and sodium phosphate salts in Kraft Mac & Cheese are "artificial," Plaintiffs' lawsuit also fails because they have not plausibly alleged that these ingredients actually function as "preservatives." Even if Plaintiffs are correct that citric acid *can* act as a preservative, the USDA has recognized that these ingredients can serve many other functions. Plaintiffs assert that citric acid and sodium phosphate salts are "preservatives" regardless of their intended function, but other courts have rejected this exact allegation. Absent any plausible allegation that these substances *actually* act as preservatives, Plaintiffs cannot hold Kraft Heinz liable for stating that Kraft Mac & Cheese contains no artificial preservatives.

To the extent Plaintiffs seek to enjoin Kraft Heinz from representing that Kraft Mac & Cheese contains no artificial preservatives, they lack standing to do so. Because Plaintiffs are now aware that Kraft Mac & Cheese contains allegedly "artificial preservatives," there is no risk that they will be "deceived" by the labeling in the future. As a result, Plaintiffs do not face an immediate threat of future injury, and they are not entitled to seek injunctive relief.

Finally, even if this Court allows Plaintiffs' lawsuit to proceed, it should strike their nationwide class allegations. Although Plaintiffs attempt to assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class, those claims are governed by the laws of each individual state—which means that those claims are not amenable to class-wide treatment. Under similar circumstances, many courts in this District have struck nationwide class allegations at the pleading stage. This Court should do the same here.

## ALLEGATIONS OF THE COMPLAINT

This lawsuit concerns Kraft Mac & Cheese—a familiar, convenient, and affordable comfort food that consumers have enjoyed for generations. Certain versions of the labeling include the phrases "NO Artificial Flavors" or "no artificial flavors, preservatives, or dyes." Consol. Am. Compl. ("CAC") ¶ 46. Plaintiffs allege that these representations are false because Kraft Mac & Cheese contains citric acid and sodium phosphate salts, which allegedly act as preservatives.[1] *Id.*

According to Plaintiffs, "[s]odium phosphate salts are produced by a variety of synthetic processes" including "acid base reactions between phosphoric acid and sodium carbonate." *Id.* ¶ 13. Plaintiffs also allege that sodium phosphate salts act as preservatives because they "prevent[] microbial growth and survival, lipid oxidation, and enzymatic browning." *Id.* ¶¶ 13, 16. Plaintiffs therefore allege that the sodium phosphate salts in Kraft Mac & Cheese "are artificially produced chemicals that retard the deterioration [of] consumer products." *Id.* ¶ 19.

Plaintiffs also allege that Kraft Heinz "use[s] artificial citric acid in the Products." *Id.* ¶ 20. They allege that "[m]any commercial food manufactures [sic] . . . use a synthetic form of citric acid that is derived from heavy chemical processing." *Id.* Relying on a variety of sources, Plaintiffs allege that citric acid "acts as a preservative when added to food products, including the Products at issue." *Id.* ¶ 22. Notably, those sources do not state that citric acid functions *only* as a preservative. To the contrary, the USDA's Agricultural Marketing Service—whose commentary Plaintiffs cite in their complaint—has noted that citric acid "has a wide variety of uses, *some of which* can provide preservative functions." *Id.* ¶ 25 (emphasis added).

---

[1] Plaintiffs use the term "sodium phosphate salts" to refer collectively to sodium phosphate and sodium triphosphate. *See* Compl. ¶¶ 13–19. Consistent with that usage, this brief refers to these two ingredients collectively as "sodium phosphate salts."

Based on these allegations, Plaintiffs assert four sets of claims against Kraft Heinz. First, Plaintiffs assert a claim under the Illinois Consumer Fraud Act ("ICFA"), 805 ILCS 505/1 *et seq.*, on behalf of a putative "Illinois Sub-Class." *See* CAC ¶¶ 72–81. Second, Plaintiffs assert claims under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, on behalf of a putative "California Sub-Class." *See* CAC ¶¶ 88–117. Third, Plaintiffs assert claims under New York's consumer protection statutes, N.Y. Gen. Bus. Law §§ 349 & 350, on behalf of a putative "New York Sub-Class." *See* CAC ¶¶ 88–96, 88–95.[2] Finally, Plaintiffs assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class. *See id.* ¶¶ 82–94. In addition to seeking various forms of monetary relief on behalf of these putative class members, Plaintiffs also seek an injunction forbidding Kraft Heinz's allegedly "unlawful conduct" and forcing Kraft Heinz to engage in a "corrective advertising campaign." *See* CAC at 33–34 (Prayer for Relief).

## ARGUMENT

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 661 (N.D. Ill. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the *mere possibility* of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief under Rule 8." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1045 (N.D. Ill. 2016) (emphasis added) (citations and internal quotation

---

[2] After proceeding in consecutively numbered paragraphs through Paragraph 94, the CAC re-starts at Paragraph 88 at the beginning of Count IV. *See* CAC at 25. The CAC then proceeds again in consecutively numbered paragraphs through Paragraph 117 before restarting at Paragraph 88 at the beginning of Count VI. *See id.* at 31. The CAC once again restarts at Paragraph 88 at the beginning of Count VII. *See id.* at 33.

marks omitted), *aff'd*, 653 F. App'x 482 (7th Cir. 2016). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs have not come close to carrying this burden.

## I.  Plaintiffs Have Not Plausibly Alleged That the Citric Acid and Sodium Phosphate Salts in Kraft Mac & Cheese Are "Artificial Preservatives."

Plaintiffs' claims all hinge on their allegation that Kraft Mac & Cheese contains "artificial preservatives." *See* CAC ¶ 1. To prevail on these claims, Plaintiffs must allege not only that the citric acid and sodium phosphate salts in Kraft Mac & Cheese are "artificial," but also that they act as "preservatives." Plaintiffs' allegations do not render either of these premises plausible.

### A.  Plaintiffs have not plausibly alleged that the citric acid and sodium phosphate salts in Kraft Mac & Cheese are "artificial."

The labeling of Kraft Mac & Cheese does not claim that it is free of preservatives. Instead, Kraft Heinz represents only that the products are free of *artificial* preservatives. *See* CAC ¶ 46. For that claim to be false, Plaintiffs must allege that the citric acid and sodium phosphate salts in Kraft Mac & Cheese are artificial. They have not come close to doing so.

Plaintiffs do not allege that they conducted any chemical testing of the ingredients in Kraft Mac & Cheese to determine whether they are "artificial." Rather, Plaintiffs allege only that citric acid and sodium phosphate salts *can* be produced through artificial means. For example, Plaintiffs describe a method for synthesizing sodium phosphate salts via "acid base reactions between phosphoric acid and sodium carbonate." *See* CAC ¶¶ 13–15. But they do not allege that this is the *only* way to create sodium phosphate salts. Nor do they allege that sodium phosphate salts do not exist in nature. Indeed, given that many other salts—such as sodium chloride, which is found in the sea and millions of kitchens across America—occur in nature, it is implausible that sodium phosphate salts can *only* be synthesized using the chemical process Plaintiffs outline.

The same is true of citric acid. The FDA has recognized that citric acid is "a naturally occurring constituent of plant and animal tissues." 21 C.F.R. § 184.1033(a). Although Plaintiffs characterize the extraction of citric acid through *Aspergillus niger* fermentation as an "artificial" process (CAC ¶ 20), the FDA has made clear that citric acid is a "naturally occurring" substance even when it is produced "by the solvent extraction process . . . for the recovery of citric acid from *Aspergillus niger* fermentation liquor." 21 C.F.R. § 184.1033(a). Nor is the FDA alone in this view. The USDA has also determined that citric acid "produced by microbial fermentation of carbohydrate substances" is a "nonsynthetic" ingredient." 7 C.F.R. § 205.605(a). In light of these regulations, Plaintiffs' allegation that citric acid must be "artificial" is not remotely plausible.

At most, Plaintiffs' allegations might establish that citric acid and sodium phosphate salts *might* be artificial. But Plaintiffs' speculation that these ingredients are artificial does not suffice to "nudg[e]" their allegations "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (citation omitted). And faced with similar allegations, courts in this District and elsewhere have dismissed similar claims premised on the presence of allegedly "artificial" ingredients.

In *Tarzian*, for example, the plaintiffs alleged that Kraft Heinz mislabeled its Capri-Sun beverages as having "no artificial preservatives" because they contained allegedly "artificial" citric acid. 2019 WL 5064732, at *1. While the plaintiffs conceded that citric acid could be naturally "produced by extraction from fresh fruits," they speculated that Kraft Heinz used the artificial version because it was more "economically viable" to do so. *Id.* Judge Kocoras dismissed their lawsuit. Even though the plaintiffs had alleged a "common industry practice" of using artificial "fermented citric acid," Judge Kocoras concluded that these allegations were "insufficient to link fermented citric acid to that used in Capri Sun," as they failed to "draw a connection between the common industry practice and the *actual practice* used by Kraft." *Id.* at *4 (emphasis added).

*Tarzian* is hardly an outlier. To the contrary, the *Valencia* court applied the same reasoning in rejecting the plaintiff's allegation that citric acid is "an industrially produced, synthetic ingredient," and it found that this "generalized statement about the production of citric acid is not enough to adequately allege the citric acid used in the Products is industrially produced." *Valencia*, 2024 WL 1158476, at *5 (quoting *Indiviglio v. B&G Foods, Inc.*, No. 22-9545, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023)) (alterations and internal quotation marks omitted). But the *Valencia* court identified another reason this allegation does not support a claim of deception: even if a plaintiff alleges that an ingredient is produced using a synthetic *process*, that does not mean that a "reasonable consumer acting reasonably would regard as unnatural" *ingredients* produced using that allegedly "synthetic" process. *Valencia*, 2024 WL 1158476, at *6.

Indeed, as the *Valencia* court noted, the plaintiff "describe[d] no respect in which the citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits." *Id.* The court found this fact fatal to the plaintiff's claims of deception, as "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id.*

Here too, Plaintiffs have not offered *any* factual support for their conjecture that the citric acid and sodium phosphate salts in Kraft Mac & Cheese are "artificial"—let alone that reasonable consumers view them as "artificial." Plaintiffs do not allege that they tested Kraft Mac & Cheese, that they commissioned a chemical analysis of these products, or that they are aware of the suppliers from whom Kraft Heinz procured these ingredients. Rather, like the plaintiff in *Tarzian*, Plaintiffs rely on broad allegations about the practices of "[c]ommercial food manufacturers." CAC ¶ 20. But neither these allegations nor Plaintiffs' pseudoscientific hand-waving are even

remotely sufficient to establish that the sodium phosphate salts and citric acid in Kraft Mac & Cheese are "artificial." And they are certainly not sufficient to establish that *reasonable consumers* view these ingredients as "artificial," even if they "do[] not contain anything synthetic" and are chemically identical to the "natural" versions of these ingredients. *Valencia*, 2024 WL 1158476, at *6. Absent any *plausible* allegation that these ingredients are "artificial" or that reasonable consumers regard them as "artificial," Plaintiffs cannot state a claim against Kraft Heinz.

**B.** **Plaintiffs have not plausibly alleged that the citric acid and sodium phosphate salts in Kraft Mac & Cheese function as "preservatives."**

Even if Plaintiffs *had* plausibly alleged that the citric acid and sodium phosphate salts in Kraft Mac & Cheese were "artificial," which they have not, their claims still fail because they have not plausibly alleged that these substances *actually* act as preservatives in Kraft Mac & Cheese.

As Plaintiffs note in their complaint, the FDA defines a "preservative" as a "chemical that, when added to food, tends to prevent or retard deterioration thereof." 21 C.F.R. § 101.22(a)(5); *see also* CAC ¶ 12. Plaintiffs allege that citric acid and sodium phosphate salts can function as preservatives. *See* CAC ¶¶ 16–19 (alleging that sodium phosphate salts can act as preservatives by inhibiting microbial growth); *id.* ¶¶ 22–27 (alleging that citric acid can act as a preservative by preventing food spoilage, lowering pH, and serving as an antioxidant). But even if these ingredients *can* act as preservatives, Plaintiffs' allegations do not establish that these ingredients *actually* act as preservatives—as is required for the "No Artificial Preservatives" claim to be false.

To the contrary, the USDA has recognized that sodium phosphate salts and citric acid can serve many functions in food other than acting as a preservative. For example, the USDA has noted that sodium phosphate salts can serve as "pH control agents," "coagulants," "dispersants," "stabilizers," "emulsifiers," "sequestrants," "texturizers," and "nutrients." RJN Ex. 1. It has similarly noted that citric acid can act as an "acidulant," a "pH control agent," and a "flavoring."

8

RJN Ex. 2.  Even Plaintiffs acknowledge the USDA's finding that citric acid "has a wide variety of uses, *some of which* can provide preservative functions."  CAC ¶ 25 (emphasis added).  Although Plaintiffs' allegations might establish that citric acid and sodium phosphate salts *can* function as preservatives, they do not establish that these ingredients *do* function as preservatives—which means that Plaintiffs have not stated a plausible claim of deception.

Indeed, while Plaintiffs cite the FDA's regulatory definition of "preservatives" to support their claims of mislabeling, the regulation they cite—21 C.F.R. § 101.22—actually undermines their allegation that citric acid and sodium phosphate salts function as preservatives in Kraft Mac & Cheese.  Under that regulation, a "food to which a chemical preservative[] is added" must "bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative,' 'to retard spoilage,' 'a mold inhibitor,' 'to help protect flavor' or 'to promote color retention.'" 21 C.F.R. § 101.22(j).  Here, the labeling of Kraft Mac & Cheese—which complies in exacting detail with the FDA regulations—includes citric acid, sodium phosphate, and sodium triphosphate in the ingredient line, but does not include a parenthetical description of their function.  *See* RJN Ex. 3.  In contrast, the labeling specifically discloses the function of other ingredients in the product.  *See id.* (noting that the "Cheese Sauce Mix" in Kraft Mac & Cheese contains "paprika, annatto, and turmeric added for color").  The only logical conclusion is that Kraft Heinz does not include a "separate description of [the] function" of citric acid and sodium phosphate salts *because they do not function as preservatives*.

Plaintiffs attempt to avoid this result by alleging that the citric acid and sodium phosphate salts "are preservatives in the Products regardless of whether Defendants intended to use them as preservatives."  CAC ¶ 28.  But the FDA does not share this view—as evidenced by a warning letter in which it advised a manufacturer that it needed to disclose the preservative function of

citric acid "[i]f the citric acid is functioning as a preservative in your finished juice products." RJN Ex. 4. And other courts have rejected the proposition that reasonable consumers would believe that an "ingredient is a preservative, regardless of whether or not it has a preservative function in that particular product." *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017).

*Hu* is directly on point. There, as here, the plaintiff alleged that the defendant mislabeled its products with the phrase "No Preservatives Added," even though they contained citric acid. *Id.* at 816–17. The court dismissed this lawsuit and held that the plaintiff had not plausibly alleged that citric acid actually acted as a preservative in the products. *Id.* at 821–22. In so holding, the court rejected the plaintiff's argument that reasonable consumers view citric acid as a preservative "regardless of its functionality—*i.e.*, even if [it] does not actually preserve that particular product." *Id.* at 821. And while the plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its [p]roducts," the court explained that these "arguments and speculations are not supported by well-pleaded factual allegations" and emphasized that it "need not accept them as true." *Id.* at 822–23.

Similarly, in *Ivie v. Kraft Foods Global, Inc.*, the court dismissed a lawsuit alleging that Kraft Heinz's predecessor, Kraft Foods, mislabeled its products with the phrase "natural flavors" even though they contained sodium citrate and potassium citrate, which the plaintiff characterized as "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). "While these substances may be artificial *ingredients*," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* In so holding, the court emphasized that a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor . . . is insufficient." *Id.* at 1042 (alteration in original).

10

Here, as in *Hu* and *Ivie*, Plaintiffs have not plausibly alleged that the citric acid and sodium phosphate salts in Kraft Mac & Cheese *actually* function as preservatives. Even if Plaintiffs' allegations were sufficient to establish that these ingredients *could* act as "preservatives," the "mere possibility" that these ingredients serve that function is not enough to state a plausible claim that these ingredients *actually* function as preservatives. *Iqbal*, 556 U.S. at 679 (citation and internal quotation marks omitted). Absent any plausible allegation that these ingredients function as preservatives and do not serve some other function, this Court should dismiss Plaintiffs' lawsuit.

## II. Plaintiffs Lack Standing to Seek Injunctive Relief.

Even if their claims were sufficiently plausible to survive dismissal (which they are not), Plaintiffs lack standing to seek injunctive relief. To have standing to pursue injunctive relief, Plaintiffs must allege that they face "a real and immediate threat of *future* injury" from Kraft Heinz's conduct. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (emphasis added) (internal quotation marks omitted). In the Seventh Circuit, "[t]he general rule is that consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice." *Forth v. Walgreen Co.*, No. 17-2246, 2018 WL 1235015, at *14 (N.D. Ill. Mar. 9, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014)).

That principle bars Plaintiffs' claim for injunctive relief. Although Plaintiffs allege that an injunction is necessary to "prevent future harm" (CAC ¶ 52), Plaintiffs are now aware that Kraft Mac & Cheese contains ingredients that allegedly act as "artificial preservatives"—as evidenced by their filing of this lawsuit. Because Plaintiffs are "now aware of [Kraft Heinz's] sales practices," they are "not likely to be harmed by the practices in the future" and lack standing to seek injunctive relief. *Camasta*, 761 F.3d at 741; *see also, e.g.*, *Geske v. PNY Techs, Inc.*, 503 F. Supp. 3d 687, 703 (N.D. Ill. 2020) ("Plaintiffs who allege that they were deceived in the past—

but have not alleged any likelihood of being deceived in the future—do not have standing to seek an injunction under Article III. No risk of future harm means no basis for an injunction.").

The fact that Plaintiffs purport to represent a class of consumers does not change this result. The Seventh Circuit has made clear that "[s]tanding cannot be acquired through the back door of a class action" and that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citation omitted). Rather, the "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Thus, even if other consumers may not know that Kraft Mac & Cheese contains what Plaintiffs regard as "artificial preservatives," the "risk of future harm to proposed class members" is not enough to confer Plaintiffs with Article III standing. *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 857 (N.D. Ill. 2021).

## III. The Court Should Strike Plaintiffs' Nationwide Class Allegations.

In addition to their claims under California, Illinois, and New York's consumer protection statutes (which Plaintiffs assert on behalf of putative California, Illinois, and New York subclasses), Plaintiffs also assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class. *See* CAC ¶ 56 (defining the "Nationwide Class"); *id.* ¶¶ 82–94 (asserting claims for common-law fraud and unjust enrichment on behalf of a putative "Nationwide Class"). Because these claims are governed by the varying common laws of all fifty states and are unsuited to class-wide treatment, this Court should strike Plaintiffs' nationwide class allegations.

The Supreme Court has empowered courts to strike class allegations at the pleading stage when the defects in the class allegations are "plain enough from the pleadings." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also, e.g., Hill v. Wells Fargo Bank, N.A.*, 946 F.

Supp. 2d 817, 829 (N.D. Ill. 2013) (granting motion to strike class allegations and noting that "sometimes the complaint will make it clear that class certification is inappropriate"); *Cowen v. Lenny & Larry's, Inc.*, No. 17-1530, 2017 WL 4572201, at \*4 (N.D. Ill. Oct. 12, 2017) ("District courts, both within this district and others, have held that a motion to strike class allegations . . . is an appropriate device to determine whether the case will proceed as a class action."). Moreover, the Seventh Circuit has made clear that "[n]o class action is proper unless all litigants are governed by the same legal rules" and that "warranty, fraud, or products-liability suits may not proceed as nationwide classes." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Those principles foreclose Plaintiffs' effort to assert claims on behalf of a nationwide class.

"Federal courts in Illinois use Illinois' choice of law rules to determine the applicable substantive law." *Daly v. Glanbia Performance Nutrition, Inc.*, No. 23-933, 2023 WL 5647232, at \*3 (N.D. Ill. Aug. 31, 2023) (citation omitted). For tort claims, such as claims for common-law fraud or unjust enrichment, "Illinois uses the 'most significant relationship' test." *Id.* (quoting *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915–16 (7th Cir. 2006)). This test nominally requires the court to consider several factors, including "where the injury occurred," "where the injury-causing conduct occurred," "the domicile of the parties," and "where the relationship of the parties is centered." *Tanner*, 433 F.3d at 915 (quoting *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)) (internal quotation marks omitted). But "[u]nless another state has a more significant relationship to the parties or the occurrence, the law of the place of injury controls." *Daly*, 2023 WL 5647232, at \*3; *see also Bridgestone/Firestone*, 288 F.3d at 1017 (noting that, in cases of "consumer fraud," the "injury is decidedly where the *consumer* is located") (emphasis in original).

Consistent with that principle, federal courts in Illinois have agreed that claims premised on allegedly false advertising—including common-law claims—are governed by the law of the

13

state in which each class member's purchase took place. *See, e.g.*, *Daly*, 2023 WL 5647232, at *3 ("[E]ach litigant in the proposed nationwide class will be governed by the law of the state where they purchased a Protein Bar."); *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), (denying class certification in lawsuit challenging "false representations" about gas pricing and holding that "the place of each class member's gas purchase govern[s] that class member's claims") *aff'd*, 612 F.3d 932 (7th Cir. 2010); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 498 (S.D. Ill. 1999) (noting that the plaintiffs' injury "occurred at the location of each sale, and each sale occurred in one of 47 different states"). As a result, each class member's claim for unjust enrichment or common-law fraud will be governed by the law of his or her state. That is fatal to Plaintiffs' effort to assert those claims on behalf of a nationwide class, as those claims will not be "governed by the same legal rules." *Bridgestone/Firestone*, 288 F.3d at 1015.

To the contrary, courts throughout the Seventh Circuit have recognized that "[t]he laws of unjust enrichment vary from state to state." *Clay*, 188 F.R.D. at 500; *see also, e.g.*, *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006) ("It is clear just from our review of Illinois law that unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states."); *Vulcan Golf LLC v. Google Inc.*, 254 F.R.D. 521, 532–33 (N.D. Ill. 2008) (collecting cases discussing variation in unjust enrichment laws). The same is true of Plaintiffs' common-law fraud claim, as "the nuances of . . . 50 common laws" of fraud render a nationwide class unmanageable. *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998); *see also, e.g.*, *Miller v. Gen. Motors Corp.*, No. 98-2851, 2003 WL 168626, at *2 (N.D. Ill. Jan. 26, 2003) ("No court has held that the fifty states' . . . common laws of fraudulent omission[] are so similar that a single forum state's law could be applied to a multi-state class.").

14

For that reason, many courts in this District have granted motions to strike nationwide class allegations where the plaintiffs attempted to assert common-law claims on behalf of a nationwide class. In *Daly*, for example, the plaintiff—represented by Plaintiffs' counsel here—challenged the labeling of the defendant's protein bars and attempted to assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class. *See Daly*, 2023 WL 5647232, at *1. Judge Alonso struck the plaintiff's nationwide class allegations. As he explained, "a nationwide class for Daly's common-law claims would be unmanageable" in light of the "material differences among various states' common-law fraud and unjust enrichment laws." *Id.* at *4.

Similarly, in *Kubilius v. Barilla America, Inc.*, the plaintiff alleged that the defendant mislabeled its pasta sauces as containing "no preservatives" and asserted a common-law fraud claim on behalf of a putative nationwide class. No. 18-6656, 2019 WL 2861886, at *1 (N.D. Ill. July 2, 2019). Judge Bucklo granted the defendant's motion to strike the nationwide class allegations. *See id.* at *2–3. In so holding, Judge Bucklo noted that "actions such as the one plaintiff proposes are disfavored" and agreed with the defendant that adjudicating a common-law fraud claim on behalf of a nationwide class would be unmanageable. *Id.* at *2.

Here too, there is no manageable way in which this Court could adjudicate an unjust enrichment or common-law fraud claim under the laws of all fifty states. And because this is a "legal challenge," there is no need to wait until class certification to make that determination. *Id.* Even if the Court allows this case to proceed, it should strike the nationwide class allegations.

## **CONCLUSION**

This Court should dismiss Plaintiffs' lawsuit with prejudice and without leave to amend.

Dated:  March 22, 2024

Respectfully submitted,

By: /s/ Dean N. Panos
       Dean N. Panos (ARDC No. 6203600)
       Jenner & Block LLP
       353 N. Clark Street
       Chicago, IL 60654-3456
       Telephone:  (312) 923-2765
       Facsimile:  (312) 527-0484
       dpanos@jenner.com

       Alexander M. Smith
       Jenner & Block LLP
       515 South Flower Street, Suite 3300
       Los Angeles, CA 90071
       Telephone:  (213) 239-2262
       Facsimile:  (213) 239-5199
       asmith@jenner.com

       Attorneys for Defendants
       The Kraft Heinz Company and
       Kraft Heinz Ingredients Corp.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on March 22, 2024 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.


Dated:  March 22, 2024                      By: _____/s/ Dean N. Panos_____
                                                      Dean N. Panos