## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DAVID HAYES, KAMILAH GALBRETH, AND TAYLOR AMBROISNO, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-16596 |
| Plaintiff, | The Honorable Mary M. Rowland |
| v. | |
| THE KRAFT HEINZ COMPANY, and KRAFT HEINZ INGREDIENTS CORP. | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE NATIONWIDE CLASS ALLEGATIONS

**Law Offices of Todd M. Friedman, P.C.**
Steven G. Perry
Steven.perry@toddflaw.com
707 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Phone: (224) 218-0875
Fax: (866) 633-0228

Todd M. Friedman
tfriedman@toddflaw.com
21031 Ventura Blvd., #340
Woodland Hills, California 91364
Phone: (323) 306-4234
Fax: (866) 633-0228

**Crosner Legal, P.C.**
Michael T. Houchin (*pro hac vice*)
mhouchin@crosnerlegal.com
Craig W. Straub (*pro hac vice*)
craig@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... ii

TABLE OF AUTHORITIES ...................................................................................................... iii

I.     INTRODUCTION ............................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................................ 2

III.   LEGAL STANDARD ....................................................................................................... 4

IV.   ARGUMENT ..................................................................................................................... 4

    A.  DEFENDANT'S FACTUAL ARGUMENTS ARE INAPPROPRIATE ON A MOTION TO DISMISS ................................................................................................................. 4

      1.  *Plaintiffs Adequately Allege the Challenged Ingredients are Artificial* ........................ 5

      2.  *Plaintiffs Adequately Allege the Challenged Ingredients Function as Preservatives* .... 8

    B.  KRAFT'S ATTEMPT TO DISMISS PLAINTIFFS' CLAIMS ON BEHALF OF NATIONWIDE CONSUMERS IS PREMATURE AND IMPROPER ........................... 12

    C.  PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE AND DECLARATORY RELIEF ............................................................................................................... 14

V.    CONCLUSION ............................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta-Aguayo v. Walgreen Co.*,

    2023 WL 2333300 (N.D. Ill. Mar. 2, 2023) ........................................................ 2, 14

*ASARCO Inc. v. Kadish,*

    490 U.S. 605 (1989) ...................................................................................... 15

*Ashcroft v. Iqbal*,

    556 U.S. 662, 678 (2009) ................................................................................ 4

*Bell Atlantic v. Twombly*,

    550 U.S. 544, 570 (2007) ................................................................................ 4

*Bennett v. Schmidt*,

    153 F.3d 516, 518 (7th Cir. 1998) .................................................................... 4

*Boone v. PepsiCo, Inc.*,

    653 F. Supp. 3d 635 (E.D. Mo. 2023) ............................................................... 8

*Branca v. Bai Brands, LLC*,

    2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ...................................................... 9

*Brazil v. Dole Packaged Foods, LLC*,

    660 F. App'x 531 (9th Cir. 2016) ..................................................................... 6

*Cabrega v. Campbell Soup Co.*,

    2019 WL 13215191 (E.D.N.Y. Nov. 18, 2019) .................................................. 12

*Chen-Oster v. Goldman, Sachs & Co.*,

    2012 U.S. Dist. LEXIS 12961 (S.D.N.Y. Jan. 19, 2012) ..................................... 13

*Chen-Oster v. Goldman, Sachs & Co.*,

    2012 U.S. Dist. LEXIS 12961 (S.D.N.Y. Jan. 19, 2012)........................................................ 13

*Clerkin v. MyLife.com, Inc.*,

    2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011)...................................................... 13

*Connelly v. Hilton Grand Vacations Co.*,

    2012 U.S. Dist. LEXIS 81332 (S.D. Cal. June 11, 2012)...................................................... 13

*Connelly v. Hilton Grand Vacations Co.*,

    2012 U.S. Dist. LEXIS 81332 (S.D. Cal. June 11, 2012)...................................................... 13

*Covillo v. Specialtys Café*,

    2011 U.S. Dist. LEXIS 147489  (N.D. Cal. Dec. 22, 2011) ................................................... 13

*Covillo v. Specialtys Café*,

    2011 U.S. Dist. LEXIS 147489 (N.D. Cal. Dec. 22, 2011) .................................................... 13

*Flaherty v. Clinique Lab'ys LLC*,

    2021 WL 5299773 (N.D. Ill. Nov. 15, 2021)............................................................................ 14

*Gabriele v. ConAgra Foods, Inc.*,

    2015 WL 3904386 (W.D. Ark. June 25, 2015)......................................................................... 6

*Greer v. Illinois Hous. Dev. Auth.*,

    524 N.E.2d 561 (1988).............................................................................................................. 15

*Guzman v. Polaris Indus. Inc.*,

    49 F.4th 1308 (9th Cir. 2022)................................................................................................... 15

*Hibbs-Rines v. Seagate Techs., LLC*,

    2009 U.S. Dist. LEXIS 19283 (N.D. Cal. Mar. 2, 2009) ....................................................... 13

*Hibbs-Rines v. Seagate Techs., LLC*,

   2009 U.S. Dist. LEXIS 19283 (N.D. Cal. Mar. 2, 2009) ......................................................... 13

*Hilsley v. Gen. Mills, Inc.*,

   376 F. Supp. 3d 1043 (S.D. Cal. 2019) ......................................................................... 8

*Holve v. McCormick & Co., Inc.*,

   334 F. Supp. 3d 535 (W.D.N.Y. 2018) ......................................................................... 7

*Hu v. Herr Foods, Inc.*,

   251 F. Supp. 3d 813 (E.D. Pa. 2017) ......................................................................... 11

*I.B. v. Facebook, Inc.*,

   2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) ..................................................... 13

*Iglesias v. Arizona Beverages USA, LLC*,

   2023 WL 4053803 (N.D. Cal. June 16, 2023) ............................................................... 5

*Ivie v. Kraft Foods Glob., Inc.*,

   961 F. Supp. 2d 1033 (N.D. Cal. 2013) ...................................................................... 12

*Ivie v. Kraft Foods Global, Inc.*,

   2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ................................................................. 10

*Jones v. UrbanStrong, LLC*,

   2024 WL 774907 (N.D. Ill. Feb. 26, 2024) .................................................................... 1

*Kelly v. Beliv LLC*,

   640 F. Supp. 3d 286 (S.D.N.Y. 2022) ........................................................................ 12

*Kubilius v. Barilla Am., Inc.*,

   2019 WL 2861886 (N.D. Ill. July 2, 2019) ..................................................................... 9

*Le v. Kohls Dep't Stores, Inc.*,

    160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016) ......................................................... 14

*Lyons v. Coxcom, Inc.*,

    718 F. Supp. 2d 1232 (S.D. Cal. 2009) .................................................................... 13

*Lyons v. Coxcom, Inc.*,

    718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) .................................................... 13

*Mason v. Reed's Inc.*,

    515 F. Supp. 3d 135 (S.D.N.Y. 2021) .................................................................. 6, 7

*Morris v. Mott's LLP*,

    2019 WL 948750 (C.D. Cal. Feb. 26, 2019) ........................................................... 10

*Muir v. NBTY, Inc.,*

    2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) .......................................................... 14

*Noohi v. Kraft Heinz Co.*,

    2020 WL 5554255 (C.D. Cal. July 20, 2020) ........................................................... 7

*Quiroz v. Beaverton Foods, Inc.*,

    2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) .......................................................... 9

*Rice v. Nat'l Beverage Corp.*,

    2019 WL 3037094 (N.D. Ill. July 11, 2019) ............................................................. 5

*Silva v. Smucker Nat. Foods, Inc.*,

    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ........................................................ 10

*Simeone v. T. Marzetti Co.*,

    2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) ...................................................... 9, 11

*Sims v. Campbell Soup Co.*,

    2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ........................................................................ 10

*Tamayo v. Blagojevich*,

    526 F.3d 1074 (7th Cir. 2008) ........................................................................ 4

*Tarzian v. Kraft Heinz Foods Co.*,

    2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) ........................................................................ 6

*TransUnion LLC v. Ramirez*,

    141 S. Ct. 2190 (2021) ........................................................................ 15

*Troncoso v. TGI Friday's Inc.*,

    2020 WL 3051020 (S.D.N.Y. June 8, 2020) ........................................................................ 7

*Valencia v. Snapple Beverage Corp.*,

    2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ........................................................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,

    131 S.Ct. 2541 (2011) ........................................................................ 13

**Statutes**

815 ILCS 505/1 ........................................................................ 3

815 ILCS 505/2 ........................................................................ 15

Cal. Bus. & Prof. Code § 17200 ........................................................................ 4

Cal. Civ. Code § 1782(d) ........................................................................ 15

Cal. Civ. Code § 1750 ........................................................................ 3

NY G.B.L § 349 ........................................................................ 4, 15

NY G.B.L § 350 ........................................................................ 4, 15

**Other Authorities**

7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785.3 ...................................... 13

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §

1798 (3d ed. 2005) ...................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................................................................................... 4

Fed. R. Civ. P. 8 .................................................................................................................................. 4

**Regulations**

21 C.F.R. § 101.22.......................................................................................................................... 8, 9

21 C.F.R. § 101.22(i)(2)................................................................................................................... 12

21 C.F.R. § 173.280........................................................................................................................... 7

21 C.F.R. § 184.1033(a)..................................................................................................................... 7

Plaintiffs David Hayes, Kamilah Galbreth, and Taylor Ambroisno ("Plaintiffs") respectfully submit this response in opposition to Defendants The Kraft Heinz Company and Kraft Heinz Ingredients Corp.'s ("Kraft") Motion to Dismiss Plaintiffs' Consolidated Complaint, Dkt. 24 (cited as "Mot." throughout).

## I.    INTRODUCTION

Kraft labels its macaroni and cheese products with objectively false claims that they contain "no artificial preservatives" (the "Products"). In direct contradiction to the "no artificial preservatives" label, the Products contain sodium phosphate, sodium triphosphate, and citric acid which are artificially manufactured chemical preservatives (the "challenged ingredients"). *See* Plaintiffs' Consolidated Amended Complaint, Dkt. 17, ("CAC") at ¶ 11. Plaintiffs allege reasonable consumers do not expect that products labeled as containing "no artificial preservatives" contain synthetically created chemical preservatives. CAC ¶ 32-34. Plaintiffs allege how the challenged ingredients *in the Products* are synthetically produced and how each challenged ingredient *in the Products* functions as a preservative to retard the deterioration of the Products. CAC ¶13-28.

In response to the CAC, Kraft argues facts which demonstrate why its motion should be denied. For example, Kraft states Plaintiffs have not "established" that the challenged ingredients in the Products are artificial preservatives. Mot. at 1, 6. First, Plaintiffs are not required to "establish" facts at this stage—they need only allege enough facts, which must be accepted as true, to "state a claim to relief that is plausible on its face." *Jones v. UrbanStrong, LLC*, 2024 WL 774907, at *1 (N.D. Ill. Feb. 26, 2024) (Rowland, J.).[1] "A motion to dismiss tests the sufficiency of a claim, not the merits of the case." *Id.* Plaintiffs do this by explaining how the challenged

---

[1] Internal citations are omitted here and throughout unless otherwise noted.

ingredients are synthetically manufactured and describing how and why they function as preservatives. Plaintiffs cite published scientific literature and government regulations to back up their allegations. Unlike Plaintiffs, Kraft fails to put up any proof to back-up its arguments. It wholly fails to even explain how the challenged ingredients in the Products are manufactured in a non-artificial way and how known preservatives are not preservatives.

Next, Kraft offers two rote arguments which are routinely rejected. Kraft argues the nationwide class claims should be dismissed. However, striking class claims at this stage is premature. *Acosta-Aguayo v. Walgreen Co.*, 2023 WL 2333300, at *8 (N.D. Ill. Mar. 2, 2023) (Rowland, J.). Lastly, Kraft argues Plaintiffs lack standing to seek injunctive relief. The consumer protection statutes at issue specifically allow for injunctive relief, and Plaintiffs have adequately alleged the likelihood of recurring economic injury, so this argument fails too. Kraft's motion should be denied in full.

## II. FACTUAL BACKGROUND

This case is brought on behalf of purchasers of the Products in the United States between November 21, 2018, and the present. CAC ¶ 56. Plaintiffs also bring three subclasses of all persons who purchased the Products in Illinois, California, and New York. *Id.* at ¶ 57-59. Plaintiffs allege that at least twelve Products are mislabeled as having "no artificial preservatives" because the products contain the challenged ingredients. *Id.* at ¶ 11. The challenged ingredients in Kraft's Products are artificially created and function to retard the deterioration of the Products. *Id* at ¶ 28.

The sodium phosphate and sodium triphosphate in the Products are artificially made by reacting sulfuric acid to form phosphoric acid and calcium sulfate, phosphoric acid is then reacted with sodium hydroxide to create sodium phosphate salts and water. *Id.* at ¶ 14; *see also id.* at ¶ 15 (diagram depicting reaction). Sodium phosphate and sodium triphosphate "are added to foods to

retard the deterioration thereof by preventing microbial growth and survival, lipid oxidation, and enzymatic browning to extend the shelf life of consumer food products." *Id.* at ¶ 16 (citing published literature by the National Academies of Sciences, Engineering, and Medicine). Published food microbiology science concludes sodium phosphate and sodium triphosphate used in food products are "Compounds Used for Food Preservation." *Id.* at ¶ 18. Similarly, citric acid in the Products is derived from "heavy chemical processing" which includes the use of "biologically engineered black mold," "[c]hemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons…" *Id.* at ¶ 20 (citing published research). The FDA has stated that citric acid in not "natural" and is a preservative when added to foods. *Id*. at ¶¶ 21-23. Dictionary definitions, United States Department of Agriculture, and numerous academic journals declare citric acid a food preservative. *Id.* at ¶¶ 24-28.

Published consumer research has found that "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods." CAC ¶ 36. Plaintiffs relied on the "no artificial preservatives" statements when purchasing the Products (*id.* at ¶ 32) and were unaware the Products contain artificial preservatives when they purchased them *(id*. at ¶ 45). Furthermore, Plaintiffs are average consumers, not food chemists, and could not have known that the Products contain artificial preservatives. *Id*. at ¶ 44. As such, Plaintiffs and class members lost money since they did not receive Products that are free from artificial preservatives. *Id*. at ¶ 41-42.

Plaintiffs allege Kraft's mislabeling constitutes violations of the Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, unjust enrichment, Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"),

3

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), breach of express warranty, and New York General Business Law §§ 349 and 350. *Id*. at ¶¶ 72-95.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A court must draw all reasonable factual inferences in the plaintiff's favor. *Bell Atlantic*, 550 U.S. at 555–56. "[A] court must take the allegations as true, no matter how skeptical the court may be." *Ashcroft*, 556 U.S. at 696. "A complaint need not 'allege all, or any, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). "Litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Rule 8." *Bennett*, 153 F.3d at 519. "A plaintiff's complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo*, 526 F.3d at 1081. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…" *Id*.

## IV. ARGUMENT

### A. DEFENDANT'S FACTUAL ARGUMENTS ARE INAPPROPRIATE ON A MOTION TO DISMISS

Plaintiffs plausibly alleged factual content that allows the Court to draw the reasonable inference that Kraft is liable for the misconduct alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). As noted above and further detailed below, Plaintiffs allege the challenged ingredients in

the Products are chemically produced artificial substances that act as preservatives. These allegations are backed by published science, the FDA, and USDA. CAC at ¶¶ 13-28.

     *1. Plaintiffs Adequately Allege the Challenged Ingredients are Artificial*

Kraft ignores Plaintiffs' allegations and asserts issues of fact. First, Kraft argues Plaintiffs failed to allege that sodium phosphate salts and citric acid in the Products are artificial. Mot. at 5. That is false. Regarding sodium phosphate salts, Kraft claimed that Plaintiff failed to allege the artificial synthesis of sodium phosphate salts in the complaint is the only synthesis for phosphate salts and failed to allege that sodium phosphate salts do not exist in nature. Sodium and phosphate are found in various natural sources such as meat, fish, beans, and nuts. While sodium phosphates exist in natural mediums, they do not exist as pure compounds in those mediums and do not exist as pure minerals like common salt, $NaCl$. Kraft's Products list sodium phosphate and sodium triphosphate—pure substances added to the Products as ingredients. CAC ¶ 11. Creating a purified form of sodium phosphate and sodium triphosphate requires human-driven acid-base reactions as described in the complaint. *Id.* at ¶ 13-15. Plaintiffs specified that sodium phosphates are created by human driven acid-base reactions, which logically entails that they do not exist as minerals in nature. *Id.* at ¶ 13-16. Indeed, this Court has noted that "[a]t this point, the court is in no position even to agree that an ingredient entirely derived from plants is of necessity 'all natural.' Plaintiff argues that the type and degree of processing required must also be considered. This position is not manifestly unreasonable." *Rice v. Nat'l Beverage Corp.*, 2019 WL 3037094, at *6 (N.D. Ill. July 11, 2019). As a result, Kraft's arguments regarding sodium phosphate salts are both legal and factually wrong. Plaintiffs allege that the sodium phosphate salts are synthetic compounds; "there is nothing in the record to suggest that [they are] naturally occurring." *Iglesias v. Arizona Beverages USA, LLC*, 2023 WL 4053803, at *4 (N.D. Cal. June 16, 2023).

Regarding citric acid, Plaintiffs expressly pled the citric acid in the Products is an artificial preservative. CAC ¶ 28. Kraft uses "artificial citric acid in the Products" and that this type of citric acid "is manufactured via microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger*." *Id.* at 20. Furthermore, chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract citric acid and remain in the manufactured citric acid. *Id.* Several courts, including the Ninth Circuit Court of Appeals, have found it plausible that citric acid produced from *Aspergillus niger* fermentation is an artificial ingredient. *See, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533 (9th Cir. 2016) (reversing a grant of summary judgment and holding that evidence could "allow a trier of fact to find that the synthetic citric and ascorbic acids in Dole's products were not 'natural.'"); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (noting that FDA warning letters "suggest that citric acid, as produced by *Aspergillus Niger*, makes an 'All-Natural' label misleading.")[2]; *Gabriele v. ConAgra Foods, Inc.*, 2015 WL 3904386, at *4 (W.D. Ark. June 25, 2015) (accepting as true the plaintiff's allegations "that the products contain *artificially* derived citric acid or calcium chloride, in contravention of federal regulations.").

Kraft's reliance on *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 10, 2019) is misplaced. In *Tarzian*, the plaintiff failed to allege whether natural or artificial citric acid was actually used in the product. In contrast, Plaintiffs allege Kraft uses "synthetic manufactured citric acid in the Products." CAC ¶ 20. Courts have distinguished *Tarzian* when a plaintiff—like the Plaintiffs here—specifically allege the type of artificial ingredient used in a

---

[2] The *Brazil* and *Mason* cases discuss FDA warning letters stating that certain products labeled as "Natural" were misbranded because they contained artificial citric acid as an ingredient. These warning letters— which are attached as Exhibits B and C to the CAC— "at minimum, makes the plaintiff's allegations plausible rather than merely possible[.]" *Mason*, 515 F. Supp. 3d at 144.

product. *See e.g.*, *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *3 (C.D. Cal. July 20, 2020) (distinguishing *Tarzian* because "Plaintiffs have explicitly alleged that Crystal Light contains artificial malic acid."); *Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020, at *9 (S.D.N.Y. June 8, 2020) (distinguishing *Tarzian* because the type of artificial ingredient in the product was alleged).

Kraft's reliance on *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) fares no better. *Valencia* distinguished the holding in *Mason* because "there the plaintiff alleged that the citric acid derived from Aspergillus niger contained synthetic solvents, [*Mason*, 515 F. Supp. 3d at 143], but Plaintiff makes no such allegation here." *Id*. at *6. Plaintiffs here allege "[c]hemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract citric acid from aspergillus niger fermentation liquor" and that "[c]itic acid produced through chemical solvent extraction contains residues of those chemical solvents." CAC ¶ 20. This allegation is bolstered by FDA regulations describing the chemical extraction process of citric acid and note byproducts from synthetic solvents are present. *See* 21 C.F.R. § 173.280. Kraft cites to 21 C.F.R. § 184.1033(a) arguing the FDA considers citric acid to be natural, but that regulation cites to 21 C.F.R. § 173.280, which describes the synthetic process used to extract citric acid. In any event, "[t]he FDA's views, while relevant, are not dispositive on" the question of whether reasonable consumers are misled. *Mason*, 515 F. Supp. 3d at 144.

Moreover, several courts have found that whether a particular ingredient is natural or artificial is a question of fact. *See, e.g., Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 546 (W.D.N.Y. 2018) ("Defendant argues that these allegations fall short because Plaintiff has not shown that the citric acid in the Products was synthetic, since citric acid may be natural or synthetic… However, taken as true, and with all reasonable inferences drawn in Plaintiff's favor, these allegations make it plausible that Plaintiff paid an inflated price for Chicken Seasoning Mix

labeled as natural which was, in fact, unnatural."); *Boone v. PepsiCo, Inc.*, 653 F. Supp. 3d 635, 646 (E.D. Mo. 2023) ("The Court acknowledges that Defendant may very well prove that the tocopherols in the Products are of the non-artificial variety, and therefore its labeling is not false, but such argument is properly resolved on summary judgment or at trial, not in a motion to dismiss."); *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1047 (S.D. Cal. 2019) ("Whether Plaintiff is correct that General Mills used the d-l form of malic acid, and whether it used malic acid as a flavoring agent rather than a pH balancing agent are issues of fact that cannot be resolved at the pleading stage.").

## 2. *Plaintiffs Adequately Allege the Challenged Ingredients Function as Preservatives*

Next, Kraft argues Plaintiffs failed to show that sodium phosphate salts and citric acid function as preservatives in the Products. Mot. at 8. That argument does not align with a plain reading of the FDA's chemical preservative regulations, is scientifically inaccurate, and asserts issues of fact regarding reasonable consumers' understanding of the term "no artificial preservatives." The FDA defines chemical preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22 (emphasis added). The term "tend" is defined in common parlance as to be likely to behave in a particular way or have a particular characteristic.[3] 21 C.F.R. § 101.22 does not define chemical preservatives based on the intended function of those chemicals, rather it defines chemical preservatives based on the likelihood that those chemicals will display characteristics that retard

---

[3] Cambridge Dictionary, Definition of Tend,
https://dictionary.cambridge.org/us/dictionary/english/tend

the deterioration of food. *See* 21 C.F.R. § 101.22. Therefore, Kraft's assertion that Plaintiffs must "establish" that the challenged ingredients specifically function as preservatives in the products is incorrect.

Sodium phosphate salts and citric acid extend the shelf-life of the Products by creating an environment inhospitable to bacteria growth. CAC ¶ 28. Plaintiffs included a table published in Food Microbiology: Fundamental and Frontiers displaying that sodium phosphates are used as preservatives in cheese. *Id*. at ¶ 18. The Products are macaroni and cheese products, they contain cheese. *Id*. at ¶ 11. Plaintiffs also included multiple sources referring to citric acid as a preservative in a variety of contexts. Id. at ¶ 21-24. The chemical structures of sodium phosphate salts and citric acid dictate that they have bacterio-static effects on their environment, as a result sodium phosphate salts and citric acid are chemical preservatives in the Products because they tend to retard the deterioration of food. CAC ¶ 28; *See also* 21 C.F.R. § 101.22.

This Court should follow the several courts holding that the function of an ingredient in a food product presents a question of fact that cannot be decided on a motion to dismiss. *See*, *e.g.*, *Simeone v. T. Marzetti Co*., 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) (denying motion to dismiss where the plaintiff alleged citric acid functions as a preservative); *Quiroz v. Beaverton Foods, Inc*., 2019 WL 1473088, at *8 (E.D.N.Y. Mar. 31, 2019) (same); *Kubilius v. Barilla Am.*, Inc., 2019 WL 2861886, at * 4 (N.D. Ill. July 2, 2019) (rejecting the defendant's argument that the plaintiff "was required to plead facts indicating that citric acid 'functions as a preservative' in the defendant's product, i.e., a jar of pasta sauce); *see also Branca v. Bai Brands*, *LLC*, 2019 WL 1082562, at * 4-5 (S.D. Cal. Mar. 7, 2019) (holding that the Court could not make a factual determination as to whether malic acid functions as an artificial flavor in the product at issue on a motion to dismiss at the pleadings stage); *Morris v. Mott's LLP*, 2019 WL 948750, at * 4 (C.D.

Cal. Feb. 26, 2019) (holding that the defendant's argument "that the malic acid in its snacks functions exclusively as pH control agent and not as a flavor ... [was] inappropriate for determination on a motion to dismiss." (quotations and citation omitted)); *Sims v. Campbell Soup Co.*, 2018 WL 7568640, at * 5 (C.D. Cal. Sept. 24, 2018) ("Defendants' arguments that malic acid is not, or does not function as, a flavor go to disputed factual questions that the Court cannot resolve at the motion to dismiss stage."); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at * 10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss."); *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at * 8 (E.D.N.Y. Sept. 14, 2015) (holding that the issue of whether phosphoric acid functioned as a chemical preservative in the product at issue "is a question of fact that cannot be decided as a matter of law at th[e] [pleadings] stage of the case.").

Finally, Kraft's function argument is based on an underlying assertion of fact regarding reasonable consumers interpretation of "no artificial preservatives," specifically that reasonable consumers would be satisfied eating a chemical that has preservative chemical properties, because they were included in the Products for another reason like taste.

First, while Kraft offers nothing related to consumer perception of the claims at issue, Plaintiffs put forth published consumer research finding the overwhelming majority of consumers purchase products that are "free from" artificial preservatives because they are seeking out more natural and less processed foods. CAC ¶ 36. Consumers deem "preservative-free" claims as one of the most important claims when purchasing food products. Id. at ¶¶ 36-37.

Second, consumer interpretation of product labeling is an issue of fact inappropriate at this stage. *Bell v. Publix Super Markets, Inc.* is controlling on this point. 982 F.3d 468, 478 (7th Cir. 2020). In *Bell*, the plaintiff challenged the label "100% grated parmesan cheese" as deceptive where the ingredients label stated the product contained other ingredients. *Bell*, 982 F.3d at 468-469. The trial court dismissed the claims on the basis that a reasonable consumer, using common sense, would scrutinize the packaging to determine that the product contained more than just cheese, such that "100% grated parmesan cheese" reasonably meant the cheese was "100% grated" not "100% cheese." *Id*. On appeal, the Seventh Circuit reversed holding that, "what matters most is how real consumers understand and react to the advertising… [c]onsumer protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." Id. at 478. Consumer protection statutes do not impose a duty on reasonable consumers to parse the language of "no artificial preservatives" to determine if Kraft actually meant "this product does not contain artificial chemicals that prevent food from spoiling" or "this product contains artificial preservatives, but we are using them because they taste good".

Furthermore, Kraft's reliance on Hu and Ivie are flawed. In *Hu*, the Court engaged in a parsing of labeling language directly in opposition to the reasoning of *Bell. See Hu v. Herr Foods*, Inc., 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017). Additionally, the plaintiffs in Hu failed to plead a factual basis for the challenged ingredients to function as preservatives in the challenged products. *See id.* Meanwhile, Plaintiffs here plead a detailed factual basis regarding how the challenged ingredients function as preservatives. CAC ¶¶ 13-28. For these reasons, Courts have declined to follow Hu. *See Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) ("Defendant's citation to *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) is unavailing

11

because the plaintiff there failed to explicitly allege that citric acid acted as a preservative in the product at issue, id. at 821–822; Plaintiffs here have explicitly alleged that '[c]itric acid stabilizes the active ingredients in the Products and thus is a preservative'… Plaintiffs' allegations are sufficient at this stage to state a claim that citric acid works as a preservative in the Products."); *Cabrega v. Campbell Soup Co.*, 2019 WL 13215191, at *10 (E.D.N.Y. Nov. 18, 2019) ("[U]nlike the complaint in Hu I, the FAC plausibly alleges that the ingredients at issue, i.e., citric acid and ascorbic acid, actually function as a preservative in the Products. Again, plaintiffs need not plead specific evidence or extra facts to further 'substantiate that assertion,' on a Rule 12(b)(6) motion to dismiss."); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 298 (S.D.N.Y. 2022) ("The *Hu* court's reasoning is unpersuasive. In reaching its decision, the district court noted that plaintiff had not supported her definition of preservative; however, as discussed, Plaintiff's definition of "preservative" is supported by the common definition of that term.").

In the *Ivie* case, there was no indication in the FDA regulations, or any other source provided to the Court that the challenged ingredients in Ivie, potassium citrate and sodium citrate, were flavors. *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1041–42 (N.D. Cal. 2013) ("A bare, conclusory assertion that these [potassium citrate and sodium citrate]… 'simulate[ ], resemble[ ], or reinforce[ ] the characterizing [lemon] flavor,' without any basis for such a conclusion in the FDA regulations or otherwise, is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)."). In the case at bar, Plaintiffs provided multiple sources that the challenged ingredients are preservatives, and that sodium phosphate salts are used as preservatives in cheese specifically. CAC ¶¶ 13-28.

**B.    KRAFT'S ATTEMPT TO DISMISS NATIONWIDE CLAIMS IS PREMATURE AND IMPROPER.**

Kraft's argument in support of striking Plaintiffs' claims on behalf of nationwide consumers should be denied, as it prematurely seeks to resolve disputed factual issues about whether a nationwide class may be certified. In rejecting premature efforts to dismiss class allegations, courts have repeatedly recognized that where, as here, the factual issues critical to class certification are disputed, a court may not resolve the merits of plaintiffs' request for certification without the benefit of a developed record.[4]

Since the Supreme Court issued *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) courts have repeatedly denied premature requests to dismiss class allegations, recognizing discovery is necessary to evaluate class claims. *See, e.g.*, *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2011 U.S. Dist. LEXIS 147489, at *17-18 (N.D. Cal. Dec. 22, 2011) (denying defendants' motion to dismiss class claims as premature); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2012 U.S. Dist. LEXIS 12961, at *13-14 (S.D.N.Y. Jan. 19, 2012) (denying motion to strike class allegations as premature in Title VII gender discrimination action); *Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, *7 (S.D. Cal. June 11, 2012) ("To the extent that Hilton seeks to 'resolve class claims at the pleading stage, … however, its motion

---

[4] *See generally* 7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785.3 ("As a practical matter, the court's [certification] determination usually should be predicated on more than the complaint itself affords.") *See I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) (denying as premature a motion to strike class allegations based on Facebook's argument that allegations presented highly individualized facts); *Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ("Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations. Accordingly, Defendants' Rule 12(b)(6) motion concerning Plaintiffs' class allegations is denied."); *Cholakyan*, 796 F. Supp. 2d at 1245-46 (rejecting motion to dismiss class allegations in advance of a motion for class certification as class allegations are disputed and require ample discovery); *Hibbs-Rines v. Seagate Techs., LLC*, No. C08-0540, 2009 U.S. Dist. LEXIS 19283, at *7-8 (N.D. Cal. Mar. 2, 2009) ("Discovery is integral to developing the shape and form of a class action and granting of motions to dismiss class allegations before discovery has commenced is rare'") (internal quotations and citations omitted); *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) (denying motion to strike class allegations).

is improperly brought pursuant to Federal Rule of Civil Procedure 12(b)(6)."); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1798 (3d ed. 2005) ("<u>Compliance with Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary-judgment motion."</u>) (Emphasis added). Indeed, this Court recently rejected the argument that class claims should be analyzed at this stage noting, "courts 'in this district have largely declined to strike nationwide class allegations at the pleading stage …'" *Acosta-Aguayo*, 2023 WL 2333300, at *8 (quoting *Flaherty v. Clinique Lab'ys LLC*, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021)).

Kraft seeks to prejudice Plaintiffs by denying them class discovery necessary for a properly supported motion for class certification, a motion that requires Plaintiffs to put forward evidence that the prerequisites of Rule 23 are met. Cognizant of this burden, Kraft unfairly attempts to shift its burden to Plaintiffs prior to Plaintiffs' filing of a motion for class certification, thereby precluding the introduction of extrinsic evidence necessary to satisfy the prerequisites of Rule 23(a) and (b). For these reasons, the Court should decline to dismiss class allegations prior to a motion for class certification. *See supra*.

### C. PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE AND DECLARATORY RELIEF

A plaintiff may sufficiently plead the likelihood of recurring economic injury required for injunctive relief, where he or she alleges that the deceptive advertising is "company-wide, pervasive, and continuous." *Le v. Kohls Dep't Stores, Inc*., 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016); *Muir v. NBTY, Inc.,* No. 15 C 9835, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016) (holding a plaintiff in a consumer products class action could seek injunctive relief where the plaintiff was able to show that the defendant's fraudulent conduct was ongoing). Kraft cannot deny, at this stage, that it is engaging in a common scheme to deceive reasonable consumers as

14

alleged in the CAC without asserting an issue of fact. The scheme at issue directly targeted and subjected Plaintiffs to the false advertisements of Kraft, i.e. that the Products (would contain "no artificial preservatives" when in fact the Products contain artificial preservatives. CAC ¶ 11.

However, if the Court agrees there's no standing to pursue injunctive relief, the dismissal of Plaintiffs' injunctive relief claims must be without prejudice or remanded back to state court. The consumer protection statutes at issue provide that any person damaged by conduct in violation of the acts may seek injunctive relief. *See* 815 ILCS 505/2; Cal. Civ. Code § 1782(d); N.Y. G.B.L §§ 349-350. Standing in Illinois is broader than Article III standing. *See Greer v. Illinois Hous. Dev. Auth.,* 524 N.E.2d 561 (1988). Under these circumstances, Plaintiff's claims must be dismissed without prejudice. *See ASARCO Inc. v. Kadish,* 490 U.S. 605, 617 (1989) (State courts "are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law"); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2224 (2021) ("By declaring that federal courts lack jurisdiction, the Court has thus ensured that state courts will exercise exclusive jurisdiction over these sorts of class actions."); *Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1315 (9th Cir. 2022) ("the district court erred in granting summary judgment in favor of Polaris on that claim, which could prevent [the plaintiff] from attempting to raise his UCL claim in state court. Instead, the district court should have… dismissed it without prejudice for lack of equitable jurisdiction").

## V.     CONCLUSION

For the reasons explained above, Plaintiffs respectfully requests the Court deny Kraft's Motion to Dismiss Plaintiffs' Consolidated Complaint. In the alternative, Plaintiffs request the Court grant leave to file a First Amended Consolidated Complaint to correct any deficiencies in their Consolidated Complaint. *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).

Respectfully submitted,

By: /s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Phone: (224) 218-0875
Fax: (866) 633-0228
Steven.perry@toddflaw.com

Crosner Legal, P.C.
Michael T. Houchin (pro hac vice)
mhouchin@crosnerlegal.com
Craig W. Straub (pro hac vice)
craig@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 22, 2024,  a copy of the foregoing Response to Defendants' Motion to Dismiss Plaintiffs' Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

<u>/s/ Steven G. Perry</u>
Attorney for Plaintiff