IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HAYES, KAMILAH GALBRETH, and TAYLOR AMBROISNO, on behalf of themselves and all others similarly situated, | |
| | Case No. 1:23-cv-16596 |
| Plaintiffs, | Judge Mary M. Rowland |
| v. | |
| THE KRAFT HEINZ COMPANY and KRAFT HEINZ INGREDIENTS CORP., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs David Hayes, Kamilah Galbreth, and Taylor Ambroisno ("Plaintiffs") have sued the Kraft Heinz Company and Kraft Heinz Ingredients Corporation ("Defendants," or "Kraft"), alleging common law fraud, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Practices Act, the California Consumer Legal Remedies Act, the California Unfair Competition Law, and the New York General Business Law. For the reasons stated herein, Defendants' motion to dismiss, or in the alternative, to strike Plaintiffs' nationwide class allegations [23] is granted in part and denied in part.

## I. Background

The following factual allegations taken from the operative complaint [17] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Defendants sell a variety of Kraft Macaroni and

1

Cheese products (the "Products") that are labeled, marketed, and sold with a label reading "No Artificial Flavors, Preservatives, or Dyes," as exemplified below:





[17] ¶¶ 11, 46. However, the Products all contain citric acid, sodium phosphate, and/or sodium triphosphate (collectively, the "Ingredients"). [17] ¶ 11.

Sodium phosphates[1] are produced by a variety of synthetic processes including acid base reactions between phosphoric acid and sodium carbonate. [17] ¶ 13.

---

[1] The parties treat "sodium phosphates" and "sodium triphosphates" interchangeably in their arguments. For simplicity's sake, the Court will refer to both as "sodium phosphates."

According to Plaintiffs, sodium phosphates are synthesized by reacting sulfuric acid with tricalcium phosphate to form phosphoric acid and calcium sulfate. [17] ¶ 14. Phosphoric acid is then reacted with sodium hydroxide to create sodium phosphate salts. [17] ¶ 14. Sodium phosphates are frequently, although not exclusively, used as preservatives in foods including in cheese. [17] ¶¶ 16-18. Plaintiffs allege that sodium phosphate salts are thus artificial and that they are used as preservatives in the Products. [17] ¶ 19.

Plaintiffs also allege that Defendants use artificial citric acid in the Products. [17] ¶ 20. Plaintiffs refer to a number of scientific and academic journals explaining that while citric acid occurs naturally and can be extracted from fruit, many commercial manufacturers, including Defendants, use a synthetic form that is manufactured from a type of black mold called *Aspergillus niger*. [17] ¶ 20. Citric acid acts as a preservative when added to food, including the Products here. [17] ¶ 22. The FDA has sent warning letters to certain food manufacturers for branding their products as "natural" when those same products used citric acid as a preservative. [17] ¶ 23.

Plaintiffs are residents of Illinois, California, and New York, and all purchased Products during the class period. [17] ¶¶ 3-5. Plaintiffs bring claims against Defendants on behalf of a putative nationwide class and sub-classes from their respective states. [17] ¶¶ 56-59. In Count I, Plaintiff Hayes alleges on behalf on the Illinois sub-class that Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act; in Counts II and III, Plaintiffs allege common law fraud and unjust enrichment on behalf of the nationwide class and all sub-classes; in

3

Counts IV and V, Plaintiff Galbreth alleges on behalf of the California sub-class that Defendants violated the California Consumer Legal Remedies Act and the California Unfair Competition Law; and in Counts VI and VII, Plaintiff Ambroisno alleges on behalf of the New York sub-class that Defendants violated the New York General Business Law. [17]. Plaintiffs seek monetary damages and injunctive relief, among other things. [17] Defendants move to dismiss all of Plaintiffs' claims or, in the alternative, to strike Plaintiffs' class allegations. [23].

**Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to

be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## II. Analysis

### A. Overview

Defendants offer only two arguments in support of their motion to dismiss all of Plaintiffs' counts for failure to state a claim. They argue (1) Plaintiffs have not plausibly alleged that the Ingredients are artificial, and (2) even if they had, Plaintiffs have not plausibly alleged that the Ingredients function as preservatives. [24] at 5-11. Defendants separately argue Plaintiffs do not have standing to seek injunctive relief because Plaintiffs are aware of the presence of the allegedly artificial preservatives and thus do not face any future harm from the Products. Finally, Defendants move to strike Plaintiffs' nationwide class allegations.

### B. Plaintiffs have adequately alleged the Ingredients are artificial

#### i. Citric Acid

Defendants argue that citric acid is a natural ingredient, and even if some citric acid is artificially manufactured, Plaintiffs do not offer anything beyond conclusory

allegations to establish that Defendants used artificial citric acid in the Products. The Court disagrees.

Defendants rely heavily on *Tarzian v. Kraft*. There, plaintiffs alleged that Kraft committed common law fraud and violated New York's General Business Law because Kraft's Capri Suns contained citric acid and were advertised as containing "no artificial preservatives." *Tarzian v. Kraft Heinz Food Co.*, No. 18-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 10, 2019). The plaintiffs in *Tarzian* described the process by which citric acid could be cultivated from *Aspergillus niger* and explained that it was uneconomical for food producers to use natural citric acid. *See id.* at *1. But the *Tarzian* plaintiffs did not specifically allege that Kraft used artificial citric acid produced through *Aspergillus niger*; they only alleged that because of the "commonly used" citric acid cultivation methods in the industry, "[Kraft]'s citric acid is artificial. *Id.* at *4. The *Tarzian* court held these allegations failed to "draw a connection between the common industry practice and the actual practice used by Kraft," and thus plaintiffs "failed to allege sufficient facts showing that Kraft's 'no artificial preservatives' statement was false." *Id.*

The Court does not dispute *Tarzian*'s reasoning and agrees that simply alleging a "common industry practice" is insufficient to state a claim. However, the Court believes that Plaintiffs here have drawn a sufficient connection between the industry practice of using artificial citric acid and Defendants' practices. In their complaint, Plaintiffs incorporate by reference[2] several academic studies and articles

---

[2] "It is well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are

describing the history of citric acid and how the artificial variety derived from *Aspergillus niger* has overtaken the natural variety. Plaintiffs cite articles explaining that "[o]ver 90% of the citric acid used around the globe today is produced from fermentation." [17] ¶ 20 n.4. Another article explains that approximately 99% of the manufactured (as opposed to naturally occurring) citric acid in the world is cultivated from *Aspergillus niger*. [17] ¶ 20 n.6. The sources in Plaintiffs' complaint further explain that naturally occurring citric acid was used commercially until approximately 1916, where production peaked at around 17,500 tons a year. [17] ¶ 20 n.6. A few years later, a food chemist discovered that citric acid could be extracted from *Aspergillus niger*, and today, over 2 million tons are produced a year. [17] ¶ 20 n.6. The Court finds that Plaintiffs' complaint goes beyond simple allegations of a common industry practice and is sufficient to "provide enough factual support to raise [Plaintiffs'] right to relief above a speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018); s*ee also Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 558–59 (W.D.N.Y. 2018) (finding plausible plaintiff's claims that corn products were "unnatural" where plaintiff alleged 89% of corn in the United States was genetically modified); *Squeo v. Campbell Soup Co.*, No. 24-CV-02235-SVK, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024) (denying dismissal where plaintiffs' "well-supported allegations render it highly likely that the citric acid included in the [at-issue food product] was artificially produced").

---

central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up).

Defendants separately argue that even if Plaintiffs had adequately alleged that the Products contain citric acid that was *derived* artificially, Plaintiffs do not allege that the actual ingredient *itself* is artificial. [24] at 12. Defendants point to *Valencia*, where the court dismissed a plaintiff's claims in part because he "describe[d] no respect in which the citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits." *Valencia v. Snapple Beverage Corp.*, No. 23-1399, 2024 WL 1158476, at *5–6 (S.D.N.Y. Mar. 18, 2024).

But Plaintiffs' allegations here do not suffer from the same defect. Plaintiffs' complaint explains, for example, that "unlike natural citric acid," citric acid derived from *Aspergillus niger* "is highly inflammatory." [17] ¶ 20 n.6. Plaintiffs further allege that "[c]onsumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath." [17] ¶ 20. Unlike in *Valencia*, Plaintiffs have described several respects in which artificial citric acid differs from natural citric acid. Dismissal on this basis is thus inappropriate.

### ii. Sodium Phosphates

Defendants likewise argue that Plaintiffs only conclusively alleged that the Products contain artificial sodium phosphates and that dismissal is thus warranted. Plaintiffs' complaint explains the process by which sodium phosphates are synthesized and explains that "[s]odium phosphate salts are produced by a variety of synthetic processes including, but not limited to, acid base reactions between phosphoric acid and sodium carbonate." [17] ¶¶ 13-14. Defendants argue this is

insufficient because Plaintiffs do not allege that the acid base reactions are the *only* way to create sodium phosphates. [24] at 5. Defendants further point out that other kind of salts, like sodium chloride, occur in nature, and it's thus implausible that phosphate salts can only be created through the chemical process Plaintiffs describe. [24] at 5. Plaintiffs respond that, while sodium phosphates do exist in natural mediums, they do not exist as pure compounds in those mediums nor as pure minerals like common salt. [27] at 5. Plaintiffs further argue that the allegations in their complaint "logically entails" that sodium phosphates do not exist as minerals in nature. [27] at 5.

As with citric acid, Plaintiffs are not required to allege that it is *impossible* for sodium phosphates to exist as minerals in nature; they are only required to state a plausible claim that the sodium phosphates used in Defendants' Products are artificial preservatives. Plaintiffs alleged that sodium phosphates "are produced by a variety of synthetic processes" and that "Defendants use sodium phosphate salts that are artificial chemical preservatives in the Products." [17] ¶¶ 13, 19. They further describe in detail the process by which sodium phosphates are synthesized. [17] ¶¶ 14-15. "A complaint need not 'allege all, or any, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). "Litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Rule 8." *Bennett*, 153 F.3d at 519. Taking

9

Plaintiffs' well-plead allegations as true, the Court finds that Plaintiffs have sufficiently alleged that the sodium phosphates in the Products are artificial.

### C. Plaintiffs have adequately alleged the Ingredients are artificial

Defendants next argue that even if the Ingredients are artificial, Plaintiffs have not adequately alleged that the Ingredients "act" as preservatives in the Products. [24] at 8. The Court disagrees.

Defendants rely principally on *Hu* and *Ivie*. In *Hu*, the court dismissed a plaintiff's complaint that alleged a defendant mislabeled its products with the phrase "No Preservatives Added," even though the products contained citric acid. *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017). There, "it [was] unclear whether [the plaintiff had] squarely alleged that citric acid [did] function as a preservative" in the food products at issue. *Id*. The *Hu* plaintiff's complaint only contained allegations about "other uses" of citric acid in other, unrelated types of food. *Id*. at 822. The court held the plaintiff's allegations required a "chain of speculative assumptions [that] is simply too attenuated" to survive dismissal. *Id*.

In *Ivie*, the court dismissed a complaint alleging that Kraft mislabeled its products with the phrase "natural flavors," because even if the products contained artificial ingredients, the plaintiffs' allegations did not establish that those ingredients acted as flavors. *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). The court reasoned that plaintiffs offered only a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor" *Id*. at 1042. The *Ivie* court further noted that

"nothing in the FDA regulations suggests that [the at-issue ingredients] are *flavors*, artificial or otherwise." *Id*. at 1041.

The reasons for dismissal in *Hu* and *Ivie* are not present here. Plaintiffs allege specifically that citric acid sodium phosphates function as preservatives in the Products. *See, e.g.,* [17] ¶¶ 19, 22. Plaintiffs also cite to scholarly articles describing both Ingredients' role in preserving food, as well as FDA guidance that describes citric acid as a preservative. These allegations are enough to withstand a motion to dismiss. *See Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (finding plaintiff sufficiently alleged citric acid was a preservative where plaintiff included "detailed allegations, including that the FDA described citric acid as a preservative, that the FDA sent warning letters that suggested that citric acid was a preservative, and provided an expert declaration explaining how citric acid acts as a preservative in food and beverages"); *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) (denying motion to dismiss where the plaintiff alleged citric acid functions as a preservative).

### D. Plaintiffs do not have standing to seek injunctive relief.

Defendants next argue that Plaintiffs lack standing to seek injunctive relief. They argue that Plaintiffs are necessarily aware of the allegedly artificial preservatives in the Products, and thus cannot claim to be at risk of future injury from the Products. The Court agrees.

To have standing to pursue injunctive relief, a plaintiff must allege that they face "a real and immediate threat of *future injury*." *Simic v. City of Chicago*, 851 F.3d

11

734, 738 (7th Cir. 2017) (emphasis added) (internal quotation marks omitted). In the Seventh Circuit, "[t]he general rule is that consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice." *Forth v. Walgreen Co.*, No. 17-2246, 2018 WL 1235015, at *14 (N.D. Ill. Mar. 9, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014)); *see also Mednick v. Precor, Inc.*, No. 14 C 3624, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (collecting cases where courts ruled that plaintiffs deceived by false advertising did not have standing for prospective injunctive relief). Plaintiffs here are clearly aware of Defendants' allegedly deceptive practices, so they cannot be said to be at risk of future harm from Defendants' allegedly deceptive practices.

Plaintiffs argue that two cases compel the opposite result. They first point to *Le v. Kohls Dep't Stores, Inc.*, where the district court found plaintiffs had standing to seek injunctive relief where plaintiffs alleged that Kohls was engaged in "company-wide, pervasive, and continuous" false advertising via the publication of deceptive prices." 160 F. Supp. 3d 1096, 1110 (E.D. Wis. 2016). The court held that, unlike "in the context of a product-specific complaint," Kohls's alleged scheme was so widespread that without further factual development, it was "unclear just exactly what Le would be expected to be aware of in order to avoid future harm from Kohls." *Id.* (internal citations omitted). Conversely, it is clear here what Plaintiffs need to be aware of to avoid future harm—they simply need to avoid food products from Defendants that contain either citric acid or sodium phosphates.

Plaintiffs also point to *Muir v. NBTY, Inc.*, where the court held that a plaintiff alleging a deceptive practice had standing to pursue injunctive relief. *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016). There, Muir alleged that five separate defendants sold multiple dietary supplements that deceptively misstated the amounts of their ingredient. *Id*. at *1. The *Muir* court held that plaintiffs had standing to seek injunctive relief because their complaint alleged that defendants "continue to advertise, distribute, label, manufacture, market, and sell the [at-issue] products in a false, misleading, unfair, and deceptive manner." *Id*. at *10.

Several courts have declined to follow *Muir* on the basis that its analysis considered only whether defendants' alleged misconduct would continue, not whether plaintiffs were in fact likely to suffer a future harm because of that conduct. *See, e.g.*, *Guajardo v. Skechers USA, Inc.*, No. 419CV04104SLDJEH, 2021 WL 4302532, at *7 (C.D. Ill. Sept. 21, 2021) (declining to follow *Muir* because it "read[s] out the likelihood of future harm requirement"); *Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *7 (S.D. Ill. Apr. 6, 2017) (declining to follow *Muir* because the plaintiff and any prospective class members were "unlikely to purchase [defendant's] product again if she is truly harmed and deterred by their advertising conduct"); *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 659 n.2 (N.D. Ill. 2024) (same). Other courts have distinguished *Muir* where—as here—the alleged falsity was the presence of an ingredient in a product, rather than the amount of the ingredient. *See Daly v. FitLife Brands, Inc.*, No. 1:22-CV-00762, 2023 WL 6388112,

13

at *4 (N.D. Ill. Sept. 29, 2023) ("It is possible that *Muir* was premised on the specific fact that the alleged falsity there was the amount of a particular ingredient, a fact that the plaintiff would not readily be able to discern. Here, however, Daly . . . will not be fooled again [by the presence of the artificial ingredient]."); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *6 n.5 (N.D. Ill. July 19, 2017) (distinguishing *Muir* because, unlike in that case, plaintiffs' allegations centered around just one ingredient in a set of food products). Plaintiffs' claims here are more similar to those in *Wagner* and *Daly* than those in *Muir*. Their allegations are limited to just two ingredients in Defendants' products. And "[s]ince [Plaintiffs] are now aware of [Defendants'] sales practices, [they] are not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741. Plaintiffs thus do not have standing to seek injunctive relief.

### E. It is inappropriate to strike Plaintiffs' nationwide class allegations at the pleading stage.

Finally, Defendants ask that the Court strike Plaintiffs' nationwide class claims for common law fraud and unjust enrichment. [24] at 17. Defendants note that the Supreme Court has empowered district courts to strike class allegations at the pleading stage when defects in the class allegations are "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed in the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Defendants argue that a nationwide class alleging common law fraud and unjust enrichment cannot be certified because each class member's claim will be governed by the law of his or her own state. Defendants may well be right, but that

14

is an issue to be decided on a motion for class certification. Courts "in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable." *Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300, at *8 (N.D. Ill. Mar. 2, 2023) (citing *Flaherty v. Clinique Lab'ys LLC*, No. 1:21-CV-03447, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021)). The Court likewise declines to do so here.

## III. Conclusion

For the stated reasons, Defendants' motion to dismiss, or in the alternative, to strike Plaintiffs' nationwide class allegations [23] is granted in part and denied in part.

E N T E R :

Dated: November 13, 2024

_____
MARY M. ROWLAND
United States District Judge